Edwin F. REISS, Appellant,

v.

Gloria Jean REISS, Appellee.

No. 01–99–00352–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 1, 2001.

Rehearing Overruled March 2, 2001.

Richard N. Countiss, Houston, for Appellant.

Rita Fason, Shawn Casey, Houston, for Appellee.

Panel consists of Justices COHEN, TAFT, and PRICE.*

* The Honorable Frank C. Price, former Justice, Court of Appeals, First District of Texas at Houston, sitting by assignment.

## OPINION

COHEN, Justice.

Edwin Reiss appeals from a qualified domestic relations order (QDRO) enforcing a 1980 divorce decree. We reverse and remand with instructions.

## I. Background

Edwin and Gloria Reiss were married in December 1956. Edwin began working at Goodyear Tire and Rubber Company (Goodyear) in March 1957. The parties divorced in 1980 without an agreed property division. The divorce decree provided in pertinent part as follows:

> The Court finds that the parties own *community property* which should be divided in an equitable manner. It is therefore ORDERED that *the community property* owned by the parties shall be divided as follows:
>
> (a) Respondent [Edwin] is hereby awarded title and possession, as his separate property of the following items: [list of inapplicable items follows] ...
>
> (b) Petitioner [Gloria] is hereby awarded title and possession, as her separate property of the following items: [list of inapplicable items follows] ...
>
> The Court further finds that the parties *own as community ... a Pension Plan at Goodyear Tire & Rubber Company,* where Respondent [Edwin] is employed at its Houston, Texas, plant, *which Pension Plan the parties have a vested interest in. . . .*
>
> It is further ORDERED, ADJUDGED, AND DECREED that *if and when* Respondent, Edwin F. Reiss, retires and/or receives a pension from Goodyear Tire & Rubber Company, or for any other reason becomes entitled to receive retirement or pension benefits from Goodyear Tire & Rubber Company, then, and in such event, Petitioner [Gloria] *shall receive fifty percent (50%) of such* retirement or pension benefit to [sic] which Edwin F. Reiss *is entitled to receive* from Goodyear Tire & Rubber Company.

(Emphasis added.) No one appealed this divorce decree.

Edwin remarried in 1982. He retired from Goodyear and began receiving pension payments in May 1998. Gloria moved to enforce the divorce decree by a QDRO several months later. *See* TEX.FAM CODE ANN. §§ 9.001, 9.006, 9.101, 9.104 (Vernon 1998). The trial judge ruled for Gloria to receive one-half of Edwin's Goodyear retirement benefits.

Edwin contends the trial judge erred in determining that the 1980 divorce decree awarded Gloria half of all Edwin's retirement benefits, rather than half of only the community-property portion of those benefits, *i.e.,* the portion of benefits corresponding to the time the marriage and Edwin's participation in Goodyear's retirement plan overlapped.

## II. Construing the 1980 Divorce Decree

### 1. Rules of Construction

We construe the divorce decree as a whole with an eye toward harmonizing and giving effect to all provisions. *Carlson v. Carlson,* 983 S.W.2d 304, 306 (Tex. App.—Houston [1st Dist.] 1998, no pet.). The divorce decree's interpretation is a legal question, which we review de novo. *See In re Marriage of Cannaliato,* 28 S.W.3d 96, 97 (Tex.App.—Texarkana 2000, no pet.). If the decree is plain and unambiguous, we must give effect to its language's literal meaning. *Baxter v. Ruddle,* 794 S.W.2d 761, 763 (Tex.1990). We presume the trial judge acted as applicable law required. *See Patino v. Patino,* 687 S.W.2d 799, 802 (Tex.App.—San Antonio

1985, no writ) (reviewing divorce award of military retirement benefits).

## 2. The Decree Awarded Gloria Half of Only the Community Property Interest in Edwin's Retirement Benefits.

■ Edwin reads the divorce decree to award Gloria only half of his benefits' community-property portion, *i.e.*, that portion corresponding to the time the marriage and his retirement plan participation overlapped (28.24 percent of his total benefits).[1] Gloria reads the divorce decree to award her half of *all* Edwin's retirement benefits, *i.e.*, half of the community and separate-property portions added together. The trial judge agreed with Gloria. We agree with Edwin.

The only property the divorce decree purported to divide was community property. The judge specifically found Edwin and Gloria owned the retirement plan "as community" and that "the parties *have a vested interest in*" the plan. (Emphasis added.) Gloria could not have had a "vested interest" on the date of divorce in that part of the benefit that Edwin did not earn

until after the divorce. Her "vested interest" (and Edwin's) on that day must have existed on that day to have been vested on that day. *See* BLACK'S LAW DICTIONARY 1557 (7th ed.) ("vested" means a "completed, consummated right for present or future enjoyment ..."; "vested interest" is one "consummated in a way that will result in future enjoyment"). Moreover, three years before this divorce, the Supreme Court had recognized what it called a non-employee spouse's *"vested* contingent community property rights" in that portion of the employee spouse's unmatured or unvested retirement benefits corresponding to the time the marriage and the plan participation overlapped. *See Taggart v. Taggart,* 552 S.W.2d 422, 423, 424 (Tex.1977) (emphasis added); *see also Cearley v. Cearley,* 544 S.W.2d 661, 666 (Tex.1976) (same, without using term "vested ... rights"). By finding Edwin's plan was community property and by using "vested" to describe the spouses' interests, the decree was dividing only that portion of Edwin's benefits that could be characterized as community property under *Cearley* and *Taggart.*[2] We must pre-

1. That is, Edwin reads to decree to award Gloria this interest:½ × [(279 months in plan during marriage) ÷ (494 total months in plan at time of retirement)]. This equals 28.24 percent (½ × 56.48%) of Edwin's benefits. Edwin's brief does not specify whether the benefit's dollar value should be calculated at the date of divorce or date of the benefits' receipt. For reasons discussed later, and because he so argued below, we assume he means at the date of divorce.

2. The *Taggart* Court held that the former wife had a vested, contingent, community-property interest in the percentage of her former husband's unmatured/unvested retirement benefits under the following formula: *(# of months married and in plan) ÷ (# of months in plan at time of retirement).* The *Taggart* Court was considering only the calculation of the wife's contingent, community interest, not that interest's dollar value. *See Berry v. Berry,* 647 S.W.2d 945, 946 (Tex.1983) (explaining

same). Additionally, the *Taggart* (and later *Berry*) formula applies to defined-benefit plans, in which the benefit is usually based on factors such as the number of service years, age, and salary. *See Smith v. Smith,* 22 S.W.3d 140, 148 (Tex.App.—Houston [14th Dist.] 2000, no pet.); *Baw v. Baw,* 949 S.W.2d 764, 768, 768 n. 3 (Tex.App.—Dallas 1997, no writ); *Pelzig v. Berkebile,* 931 S.W.2d 398, 402 (Tex.App.—Corpus Christi 1996, no writ). Its formula does not apply to defined-contribution plans, in which the employee spouse has a separate account into which he and sometimes the employer make contributions. *See Smith,* 22 S.W.3d at 148; *Baw,* 949 S.W.2d at 768, 768 n. 2; *Pelzig,* 931 S.W.2d at 402. The record contains no evidence showing whether Edwin's was a defined-benefit plan, but his argument to the court below, his appellate brief (which cites *Taggart* as the appropriate model), and language in the QDRO indicates it was. For purposes of this opinion, without ruling on the matter, we assume that Edwin

sume the judge acted as the law required, *Patino*, 687 S.W.2d at 802, and our interpretation is the only result consistent with that presumption and this language. This paragraph, standing alone, would support Edwin's interpretation that Gloria was awarded half of only the community-property portion of Edwin's retirement benefits.

But that is not the only pertinent paragraph. Gloria contends that the paragraph actually awarding Edwin's benefits to her shows a different intent. That paragraph orders that "if and when" Edwin retires or receives his Goodyear pension, "then, and in such event, [Gloria] *shall receive fifty percent (50%) of such* retirement . . . benefit to [sic] which Edwin F. Reiss is entitled to receive from [Goodyear]." (Emphasis added.)

The *Cearley* Court approved of the division of contingent community property rights in unmatured/unvested retirement benefits by language like that used here. *See Cearley*, 544 S.W.2d at 666. In *Cearley*, the husband joined the military before his 18–year marriage and was scheduled to retire one year after the divorce. *Id.* at 661–62. The trial judge ordered that "[i]f and when" the husband retired, "and in such an event," the wife was to receive half of "18 of the fraction of the number of years of active service until retirement." *Id.* at 662. The *Cearley* Court recognized the trial court "has properly settled the matter in the divorce judgment if, as, and when the retirement benefits mature." *Id.* at 666. It held

> The administration of justice will best be served if contingent interests in retirement benefits are settled at the time of divorce, even though it may be necessary in many instances for the judgment to make the apportionment of the nonre-

tiring spouse effective if, as, and when the benefits are received by the retiring spouse. We approve this method of apportionment and award of contingent interests in military retirement benefits because of the uncertainties affecting the accrual and maturity of such benefits.

*Id.* In *Cearley*, "if, as, and when" merely recognized the contingent nature of the right. The presence of this phrase was still consistent with awarding half of only the community-property portion of the retirement benefits, which is the division the trial judge made in that case. Its presence did *not* mean the wife got a fraction of both the community *and* the husband's separate-property portions of those benefits. We presume the trial judge knew of *Cearley* and *Taggart* and constructed his decree accordingly. *See Patino*, 687 S.W.2d at 802. We find this intent clear from the language used, even if the judge did not also recite a *"Taggart*-type" fraction for Gloria's 50 percent community-property interest. To conclude otherwise, we would have to find the trial judge intended to divide this asset contrary to four-year-old Supreme Court decisions and to violate the constitutional and statutory provisions already interpreted to prohibit awards of separate property and to allow division of community property only. *See Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139–40 (Tex.1977) (recognizing division of separate property to be contrary to statute and constitution); *see also* TEX. CONST. art. XVI, § 15 (containing exclusive definition of separate property); TEX. FAM.CODE ANN. § 7.001 (Vernon 1998) (allowing "just and right" division of "estate of parties," which courts interpret to mean "community estate"). We decline to do so.

had a defined-benefit retirement plan subject     to division under a *Taggart*-type formula.

Relying on the holding in *Hurley v. Hurley*[3] that "if, as, and when received"is a term of art for valuing the non-employee spouse's interest in the employee spouse's benefits at receipt date, rather than at divorce date, Gloria concludes that the language "if and when ... Edwin ... retires ..." entitles her to a 50–percent interest in Edwin's entire benefits, not just in the community-property portion. Gloria misreads *Hurley*. In *Hurley*, the parties agreed to the following divorce decree:

> It is ORDERED, ADJUDGED, and DECREED that [the wife] receive one-half (½) of [the husband's] retirement benefits in the Mars Retirement Plan, *if, as, and when received by [the husband]*. [The wife's] entitlement to these benefits is based upon a fraction, the numerator of which is [the husband's] number of months of service at the date of divorce, 189.23, and the denominator of which is [the husband's] number of months of service [with that or related companies].

*Id.*, 960 S.W.2d at 288 (emphasis added). In a later QDRO suit, the trial judge interpreted the divorce decree to give the wife 29 percent (her decreed fractional interest) of the husband's retirement benefits valued as of the time of the benefits' receipt, rather than valued as of the time of divorce. *Id.* In affirming, we held the language "if, as and when received" was "a term of art requiring that pensions *be valued* not at the time of divorce, but at the time of receipt." *Id.* at 289 (emphasis added).

Gloria's interpretation of *Hurley* confuses a spouse's community-property *interest* in a retirement plan with that interest's *dollar value*. That is, Gloria's argument concerns the size of her interest in Edwin's benefits; *Hurley* concerned the dollar value of such an interest. These are not the same thing. In *Hurley*, the divorce decree unquestionably awarded the former wife a *Taggart*-type, community-property interest (expressed as a fraction of the husband's benefits); the only issue was whether this fractional interest was to be multiplied by the benefits' current dollar value or by what that value would have been had the husband retired on the date of divorce. *Hurley*, 960 S.W.2d at 287–88. *Hurley* concerned valuation of a spouse's fractional interest, not the computation of that fractional interest in the first place, as Gloria would read it. *Hurley* is thus consistent with Edwin's interpretation of the divorce decree. It does not support Gloria's view that the use of "if and when" awards her a 50–percent interest in Edwin's entire benefits, rather than in just the community-property portion.

We also distinguish *Anderson v. Anderson*, on which Gloria relies. 707 S.W.2d 166, 169–70 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). In *Anderson*, a suit to enforce a divorce decree, the husband began his military service before marriage and ended it before divorce, though he could not receive benefits for another 10 years. *Id.* at 167. Their agreed 1971 divorce decree awarded the wife "One-half interest in [the plan], said interest payable at [the husband's] attaining age 60." *Id.* at 168. The divorce decree incorporated the agreement and required the husband to remit to the wife "her said one-half of said retirement benefits as they are paid to him." *Id.* The Anderson court held, in pertinent part, that (1) the decree awarded half of the husband's total benefits, (2) he had not rebutted the presumption that the entire amount of benefits was community property, and (3) it was "too late" for him to claim a separate-property interest in those benefits. *Id.* at 169–70. *Anderson* is dis-

**3.** 960 S.W.2d 287 (Tex.App.—Houston [1st Dist.] 1997, no writ).

tinguishable because the decree was rendered before *Taggart* (and other law affecting the division of military retirement benefits). Here, the decree was rendered after *Taggart*, which we presume the judge followed to divide only the community-property portion. Additionally, the *Anderson* court did not construe the phrase "one-half interest in [the plan]" in light of other portions of the decree. In contrast, we view our 50–percent language in light of the whole decree, and when we do so, we find the trial judge intended to divide only the community-property portion.

We hold the divorce decree awarded Gloria 50 percent of the community-property portion of Edwin's benefits. Thus, we hold the trial judge erred in construing the divorce decree to award Gloria 50 percent of all of those benefits. *See* Tex.Fam.Code Ann. §. 9.007 (Vernon 1998) (court has no power to amend, modify, alter, or change a divorce decree's property division).

### 3. The Divorce Decree Requires Gloria's Half of the Community Property Interest to be Valued as of the Date of Receipt, not Divorce.

We have already held that we must reverse because the trial judge misconstrued the contingent interest awarded to Gloria. We still must reach another issue, however, because it affects Edwin's alternative

jurisdictional argument and, in any event, it will arise on remand.

In 1983, the Supreme Court modified *Taggart*. *See Berry v. Berry*, 647 S.W.2d 945, 946 (Tex.1983) (effectively modifying *Taggart*); *see also Burchfield v. Finch*, 968 S.W.2d 422, 424 (Tex.App.—Texarkana 1998, pet. denied); *Wilson v. Uzzel*, 953 S.W.2d 384, 390 (Tex.App.—El Paso 1997, no writ) (both recognizing modification). It held that, absent a written agreement to the contrary, a spouse's interest in the employee spouse's retirement plan is generally valued as of the date of divorce, not the date of receipt.[4] *Berry*, 647 S.W.2d at 946 (general valuation rule in unagreed decree); *Boyett v. Boyett*, 799 S.W.2d 360, 363 (Tex.App.—Houston [14th Dist.] 1990, no writ) (agreed-division exception); *accord Grier v. Grier*, 731 S.W.2d 931, 932 (Tex.1987) (following *Berry*). This is because increases in retirement benefits "accruing as compensation for services rendered" after divorce are the employee spouse's separate property,[5] which cannot be divested and given to the non-employee spouse. *See Berry*, 647 S.W.2d at 947 (quoting favorably *In re Marriage of Rister*, 512 S.W.2d 72, 74 (Tex.Civ.App.—Amarillo 1974, no writ)). If this divorce decree unambiguously required Gloria's 50 percent community-property interest to be valued as of the date of the benefits' receipt, rather than as

---

**4.** That is, when the non-employee spouse is awarded a 50 percent interest in a defined-benefit pension plan, the calculation is as follows: *50% × [ (# of months married and in plan) ÷ (# of months in plan at time of retirement) ] × (monthly benefit employee would have received at divorce date, whether then eligible or not).*

**5.** Post-divorce increases in retirement benefits—such as raises, promotion, services rendered, and contribution—attributable to the employee spouse's continued employment are his separate property. *See Phillips v. Parrish*,

814 S.W.2d 501, 505 (Tex.App.—Houston [1st Dist.] 1991, writ denied); *accord Burchfield v. Finch*, 968 S.W.2d 422, 424 (Tex.App.—Texarkana 1998, pet. denied); *see also Berry v. Berry*, 647 S.W.2d 945, 947 (Tex.1983) (pay raises plus union contract negotiations for improved benefits plan). Those that are not— such as cost-of-living increases and interest accruing on the non-employee spouse's community-property portion of the benefits—are subject to community-property division. *See Burchfield*, 968 S.W.2d at 424, 425; *Phillips*, 814 S.W.2d at 505.

of the date of divorce, then it might impermissibly award a portion of Edwin's separate property to Gloria,[6] although in a smaller proportion than Gloria wishes. We would then need to reach Edwin's alternative argument that the trial court lacked jurisdiction to divide his separate property.

■ We conclude the divorce decree values Gloria's 50–percent interest in the community-property portion of Edwin's benefits as of the date of receipt, not divorce. The decree orders, *"If and when [Edwin] retires* and/or receives a pension ... [Gloria] shall receive fifty percent of the retirement benefit to [sic] which ... Edwin ... is entitled to receive...."* (Emphasis added.) It is true that this language differs from that used in *Hurley*, in which we held that a decree giving the wife one-half of "[the husband's] retirement benefits ... *if, as, and when received by [him]"* unambiguously required the wife's interest to be valued as of the date of receipt, not divorce: here, "if and when" modifies "retires and/or receives a pension"; in *Hurley*, "if, as, and when" modified "retirement benefits." *See Hurley*, 960 S.W.2d at 289. However, the Supreme Court has equated the two phrases. In *Cearley*, the trial judge ordered that "[i]f and when" the husband retired, "and in such an event," the wife was to receive half of "18 of the fraction of the number of years of active service until retirement." *Id.*, 544 S.W.2d at 666. The *Cearley* Court held, "The administration of justice will best be served if contingent interests in retirement benefits are settled at the time of divorce, even though it may be necessary in many instances for the

judgment to make the apportionment of the nonretiring spouse effective *if, as, and when the benefits are received by the retiring spouse.* We approve this method of apportionment...."* *Id.* at 666 (emphasis added). The *Cearley* Court thus equated "if and when" the spouse retires with "if, as, and when" that spouse receives the benefits, which we have previously held is a term of art requiring valuation at receipt date. *See Hurley*, 960 S.W.2d at 289.

We do the same and hold that "If and when [Edwin] retires and/or receives a pension ... [Gloria] shall receive fifty percent of the retirement benefit to [sic] which ... Edwin ... is entitled to receive" requires valuation at the date of receipt. *See Cearley*, 544 S.W.2d at 666; *Barnard v. Barnard*, 863 S.W.2d 770, 773, 774 (Tex. App.—Fort Worth 1993, no writ) (holding the following language unambiguously awarded a *Taggart* fraction of benefits valued at receipt date: "One hundred sixty-eight (168) over the total number of months of actual service ... at the time of his retirement divided by one-half (½)").

Additionally, *Berry*—the first post-*Taggart* decision to hold a non-employee spouse's community-property interest should be valued at divorce date, not receipt date—was not decided until three years after this divorce. *Berry* modified the *Taggart* formula. *See Burchfield*, 968 S.W.2d at 424; *Wilson*, 953 S.W.2d at 390. Although the *Berry* Court noted it had resolved the same issue 18 years before in *Herring v. Blakeley*,[7] the issue was not clearly resolved until *Berry*. *See Barnard*, 863 S.W.2d at 773–74 (applying pre-*Berry* law to a 1978 divorce decree, despite recognizing that *Berry* stated the matter

6. We say "might" because the record contains no evidence whether the post-divorce increases in Edwin's retirement plan were attributable to his continued employment. We need not and do not decide the issue.

7. 385 S.W.2d 843, 845, 848 (Tex.1965).

had been resolved in 1965). As did the *Barnard* court, we presume the trial court acted according to pre-*Berry* law when the court divided this asset. *See Barnard,* 863 S.W.2d at 774; *Patino,* 687 S.W.2d at 802 (presuming judge acts as required by applicable law). In any event, we cannot apply *Berry* retroactively. *See Baxter v. Ruddle,* 794 S.W.2d 761, 763 (Tex.1990); *accord Wilson,* 953 S.W.2d at 390–91; *Echols v. Echols,* 900 S.W.2d 160, 162 (Tex. App.—Beaumont 1995, writ denied); *Barnard,* 863 S.W.2d at 774.

Therefore, we hold the divorce decree required Gloria's half of the community-property portion of Edwin's retirement benefits to be valued as of the receipt date, rather than the divorce date.

Because the date-of-receipt valuation could theoretically invade some of Edwin's separate-property retirement benefits under *Berry,* we must reach Edwin's alternative argument that the trial court lacked jurisdiction to divest him of this property.

## III.  Subject–Matter Jurisdiction

Alternatively, Edwin argues the trial court had no subject-matter jurisdiction to award any of his separate-property portion of the benefits to Gloria.

### 1.  Standard of Review

■ We review subject-matter-jurisdiction determinations de novo. *Estate of Arlitt v. Paterson,* 995 S.W.2d 713, 717 (Tex.App.—San Antonio 1999, pet. denied). "Absent one of those rare circumstances that makes the judgment 'void,' the mere fact that an action by a court ... is contrary to statute, constitutional provision or rule of civil or appellate procedure makes it 'voidable' or erroneous. A judgment is void only when it is apparent that the court rendering the judgment had no jurisdiction of the parties, no jurisdiction of the subject matter, no jurisdiction to enter the judgment, or no capacity to act as a court." *Mapco, Inc. v. Forrest,* 795 S.W.2d 700, 703 (Tex.1990). One may collaterally attack only a void judgment. *See Stewart v. USA Custom Paint & Body Shop, Inc.,* 870 S.W.2d 18, 20 (Tex.1994). Edwin acknowledges his is a collateral attack.

### 2.  Edwin's Line of Case Law

■ A court has wide discretion in dividing community property, but it may not divest a spouse of separate property. *E.g., Eggemeyer,* 554 S.W.2d at 139. Such divestment is clearly unconstitutional and in violation of statute. *See Cameron v. Cameron,* 641 S.W.2d 210, 214 (Tex.1982); *Eggemeyer,* 554 S.W.2d at 139–40; *see also* Tex. Const. art. XVI, § 15; Tex.Fam.Code Ann. § 7.001. Edwin claims courts also lack subject-matter jurisdiction to divide separate property between former spouses, absent agreement. He relies on several cases that held or stated a court has no "power" or "authority" or "jurisdiction" to divest a spouse of his separate property in such a suit. *See Cameron,* 641 S.W.2d at 214, 215, 216 (Family Code "does not imbue our courts with authority" to divest separate property; "We do not see, therefore, that the state has authorized the use of any power it might have to take separate property on divorce."; also, favorably quoting California decision that "jurisdiction" and "power" of court is so limited).[8]

8.  *Accord, Lewis v. Lewis,* 944 S.W.2d 630, 631 (Tex.1997) (per curiam) ("no authority"); *Schlafly v. Schlafly,* 33 S.W.3d 863, 871–72 (Tex.App.—Houston [14th Dist.] Nov.22, 2000, no pet. h.) (designated for publication) ("no authority"); *Rusk v. Rusk,* 5 S.W.3d 299, 307 (Tex.App.—Houston [14th Dist.] 1999, pet. denied) ("The trial court has no inherent or other authority to divide separate property, only non-separate or marital property."); *Butler v. Butler,* 975 S.W.2d 765, 767 (Tex. App.—Corpus Christi 1998, no pet.) ("does

It is true that these cases use this language, but each of them was considering a direct appeal from a divorce or post-divorce partition suit. None was considering a collateral attack on a judgment, which Edwin is making.[9]

### 3. Law of Collateral Attack of Divorce Decree

■ In contrast, when considering a collateral attack, we have found no court that speaks of improper property divisions in jurisdictional terms. Instead, they uniformly hold divorce decrees immune from collateral attack, even if the decree divested a spouse of separate property. *See Baxter v. Ruddle*, 794 S.W.2d 761, 762–63 (Tex.1990) ("[A]n apportionment of retirement benefits in a divorce decree, even if improper, is not subject to collateral attack and will be enforced.").[10] Edwin correctly notes that most of these cases involved

---

not have the power"); *Bloomer v. Bloomer*, 927 S.W.2d 118, 121 (Tex.App.—Houston [1st Dist.] 1996, writ denied) ("did not have the power"); *Powell v. Powell*, 822 S.W.2d 181, 184 (Tex.App.—Houston [1st Dist.] 1991, writ denied) ("no power"); *Roach v. Roach*, 672 S.W.2d 524, 529, 531 (Tex.App.—Amarillo 1984, no writ) ("power and authority"; "it was excluded from the court's power and authority"). Edwin also relies on the court of appeals' opinions in *Boyett*, *Robles*, and *Slaton*. *Boyett v. Boyett*, 799 S.W.2d 360 (Tex. App.—Houston [14 Dist.] 1990, no writ); *Robles*, 965 S.W.2d at 614; *Robles v. Robles*, 965 S.W.2d 605 (Tex.App.—Houston [1st Dist.] 1998, pet. denied); *Slaton v. Slaton*, 987 S.W.2d 180 (Tex.App.—Houston [14th Dist.] 1999, pet. denied). These opinions, however, said only that a court "cannot," "may not," and "is not allowed to" divide separate property; they did not use language like "power" or "authority" or "jurisdiction." *Boyett*, 799 S.W.2d at 363; *Slaton*, 987 S.W.2d at 182. The same may be said of the Supreme Court opinions in *Eggemeyer*, *Berry*, and *Grier*, on which Edwin also relies, which used only language like "does not authorize," "cannot be done," and "impermissibly invade," respectively. *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 139 (Tex.1977); *Berry*, 647 S.W.2d at 947; *Grier v. Grier*, 731 S.W.2d 931, 932 (Tex.1987).

9. We doubt that Edwin's cases were truly speaking of a lack of subject-matter jurisdiction, rather than just statutory or constitutional violation, to divide this class of property. Each of these cases was decided on direct appeal; none involved a collateral attack. *Cf. Hesser v. Hesser*, 842 S.W.2d 759, 764 (Tex. App.—Houston [1st Dist.] 1992, writ denied) (in dicta, stating, "The situation is similar to a trial judge being asked to award one spouse's separate property to another. A trial judge cannot legally do that. His legal duty is to deny the motion. If he grants it, the judgment will be reversed on appeal. However, if the injured spouse does not appeal, the judgment cannot be attacked for lack of subject matter jurisdiction because the judge had the power to divide the spouses' property, as well as the duty to deny the motion. Just because the judge had the duty to deny the motion does not mean that he had no jurisdiction to grant it. Jurisdiction is the power to adjudicate, that is, to grant or deny relief. Lack of subject matter jurisdiction is the absence of power to make any ruling at all."); *Knowles v. Knowles*, 811 S.W.2d 709, 711 (Tex.App.—Tyler 1991, no writ) (in dicta, stating, ". . . if the 1975 divorce decree is construed, albeit erroneously, to award her separate property interest in the military benefits to the appellee, the trial court's judgment must be affirmed under the doctrine of res judicata. . . .").

10. *Accord Wilson v. Uzzel*, 953 S.W.2d 384, 390–91 (Tex.App.—El Paso 1997, no writ); *Echols v. Echols*, 900 S.W.2d 160, 162 (Tex. App.—Beaumont 1995, writ denied); *Barnard v. Barnard*, 863 S.W.2d 770, 774 (Tex.App.—Fort Worth 1993, no writ); *see also Hardin v. Hardin*, 597 S.W.2d 347, 350 (Tex.1980) (dicta). *Cf. Berry v. Berry*, 786 S.W.2d 672, 673 (Tex.1990) (holding res judicata applied to unappealed division of military retirement benefits when that division was not preempted at time of divorce, but would have been preempted by later federal act had that act applied retroactively, which it did not); *Segrest v. Segrest*, 649 S.W.2d 610, 612 (Tex.1983) (same); *Ex parte Lucher*, 728 S.W.2d 823, 826–27 (Tex.App.—Houston [1st Dist.] 1987, orig. proceeding) (same, but concerning another federal statute).

agreed property divisions,[11] and that a party may agree to divest himself of separate property even if a court could not do so.[12] However, at least one of these cases did not involve an agreed property division. *See Barnard v. Barnard,* 863 S.W.2d 770, 772–74 (Tex.App.—Fort Worth 1993, no writ). And in some of those that did involve agreed divisions, their "res judicata" holdings do not appear to hinge on the agreement.[13] *See Baxter,* 794 S.W.2d at 762–63 (holding res judicata applied to improper property division before holding parties were bound by their division agreement); *Echols v. Echols,* 900 S.W.2d 160, 162 (Tex.App.—Beaumont 1995, writ denied) (not mentioning agreed nature of decree in res judicata discussion).

## 4. Reconciliation of the Case Law

Even if Edwin is right that a divorce court has subject-matter jurisdiction to divide only community property, before it can do so, it must first determine which property is community. *See Cooper v. Cooper,* 513 S.W.2d 229, 232 (Tex.Civ. App.—Houston [1st Dist.] 1974, no writ) ("As the reports of decided cases attest, the starting point in developing a case where the question of division of property is contested is the task of establishing the nature of the property to be divided as separate or as community."); Aloysius A. Leopold, TEXAS PRACTICE: MARITAL PROPERTY & HOMESTEADS, vol. 39, § 20.9, 128 (1993) [hereinafter "Leopold"]. Characterizing property as community or separate involves mixed questions of law and fact. *See* TEX.FAM.CODE ANN. §§ 3.003 (establishing evidentiary presumption for community property), 3.001–.002, 3.005–.006 (defining community and separate property) (Vernon 1998); *see Cooper,* 513 S.W.2d at 232–33. A divorce court clearly has subject-matter jurisdiction to decide which property is community, *i.e.,* to decide which property it may divide upon divorce. *Cf. Smith v. Lanier,* 998 S.W.2d 324, 332 (Tex.App.—Austin 1999, pet. denied) ("The characterization of property clearly lies within the probate court's jurisdiction over all matters relating to the settlement and distribution of a decedent's estate."). Accordingly, if a court mistakenly characterizes an item of separate property as community and then divides it, a reviewing court on direct appeal would first redesignate the property from "community" to "separate," and then, applying Edwin's assumption here that a divorce court has no jurisdiction to divide separate property, would reverse the division of that now-

---

**11.** *See Baxter v. Ruddle,* 794 S.W.2d 761, 762–63 (Tex.1990); *Wilson,* 953 S.W.2d at 391; *Echols,* 900 S.W.2d at 161; *see also Hardin,* 597 S.W.2d at 350.

**12.** *Baxter,* 794 S.W.2d at 763; *see* TEX. CONST. art. XVI, § 15 (amended Nov. 2, 1999 to allow separate property to be converted to community property by written agreement); TEX.FAM.CODE ANN. §§ 4.202.206 (effective Jan. 1, 2000, allowing same upon constitutional amendment), 7.006 (to promote settlement in a divorce or annulment suit, "the spouses may enter into a written agreement concerning the division of the property and the liabilities of the spouses and maintenance of either spouse.") (Vernon 1998 & Supp.2000).

**13.** Despite the language used by some of these courts, we question whether the doctrine of res judicata is what prevented the collateral attack in those cases. A judgment may be collaterally attacked only if it is void. If the trial courts in those cases did not have subject-matter jurisdiction, then their adjudication of the matter, *i.e.,* the res adjudicata, would be irrelevant. It would not matter that the res was adjudicated if the court that did so lacked subject-matter jurisdiction. That judgment would be void and subject to collateral attack for that reason alone. Similarly, if the trial courts in those cases had subject-mater jurisdiction, then their judgments would not be void, and the collateral attacks would fail for that reason alone, not because the res was adjudicated.

separate property. *See* Leopold, vol. 39, § 20.9.5, 25–26 (Supp.2000).

■■■■ In contrast, if the decree is not appealed, the party may not attack the property's characterization as community. *See Anderson*, 707 S.W.2d at 169–70; *Harris v. Harris*, 605 S.W.2d 684, 687 (Tex. Civ.App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.). This is because only void acts may be collaterally attacked; a decision that the court had jurisdiction to make is not void; and a court has jurisdiction to characterize property, even if it characterizes it incorrectly. *See Hesser v. Hesser*, 842 S.W.2d 759, 764 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Therefore, a mischaracterization of the property as community cannot be collaterally attacked. *Cf. Cecola v. Ruley*, 12 S.W.3d 848, 852 (Tex.App.—Texarkana 2000, no pet.) (in declaratory judgment suit for easement declaration or partition, stating in dicta that, "[A]t the time of the Cecola's divorce, the Ruley tract was owned as fee simple community property and the Cecola strip was owned as fee simple separate property with no easements. This characterization in the decree was not challenged and cannot be collaterally attacked at this time."). Given that starting point, the court reviewing that unappealed division must conclude that the divorce court acted within its subject-matter jurisdiction, because it divided something it found as a fact to have been "community" property.[14]

Here, the divorce judge expressly found the parties had a vested, community-property interest in the retirement plan. Due to the community's portion being valued at the date of receipt, he then awarded some of what likely was Edwin's separate-prop-

erty interest in those benefits to Gloria. However, we presume that the divorce judge found whatever he divided to be entirely community property. His finding so indicates, and we would presume that even had he made no express finding. Therefore, Edwin is faced in this collateral attack with a potentially erroneous, but not void, finding that *all* of the divided property was community. Because the divorce court unquestionably had subject-matter jurisdiction to characterize and then divide community property, Edwin cannot prevail.

### 4. Conclusion

■■■■ Edwin cannot now collaterally attack the divorce decree even if it erroneously awarded his separate property by requiring Gloria's 50–percent interest in the community-property portion of Edwin's retirement benefits to be valued at receipt date.

## IV. Conclusion

We sustain Edwin's sole issue.

We reverse the judgment and remand the cause for the trial judge to render a QDRO calculating Gloria's 50–percent interest in the community-property portion of Edwin's retirement benefits and valuing that interest as of the benefits' receipt date.

---

**14.** The same result obtains even without an express finding that the divided property was community. That is, because we presume the trial court followed the law, we also presume it found that piece of property to be commu-

nity, since it can legally divide only community property. Therefore, if that implied "community" finding is not appealed, it cannot be collaterally attacked.