# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-21-00051-CV

---

**Sandra F. Riley, Appellant**

**v.**

**Santomero V. Riley, Appellee**

---

### FROM THE 126TH DISTRICT COURT OF TRAVIS COUNTY
### NO. D-1-FM-95-000967, THE HONORABLE MAYA GUERRA GAMBLE, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Sandra F. Riley appeals from the trial court's Order Clarifying Final Decree of Divorce (2021 Order) concerning the Final Decree of Divorce (1996 Decree). Sandra[1] contends that the trial court lacked jurisdiction over the request for a declaratory judgment "reinterpreting" the 1996 Decree's terms regarding payment of appellee Santomero V. Riley's military pension, including determining whether the 1996 Decree contains a mistake and "whether years 1 through 13 are worth less than years 14 through 38." We will vacate the 2021 Order in part, reverse it in part, and render judgment that Santomero take nothing by his petition and that Sandra is awarded the amounts in a trust account that was created to hold the disputed pension benefits pending resolution of Santomero's petition for clarification of the divorce decree.

---

[1] Because the parties have the same last name, we will refer to them by first name.

# BACKGROUND

In its August 22, 1996 Decree, the trial court found that

> SANTOMERO V. RILEY and SANDRA F. RILEY, were originally married on April 16, 1977, and that marriage lasted for at least 18 years and 11 months or more, during which time SANTOMERO V. RILEY served at least 13 years and 9 months or more of creditable service toward retirement.

In its division of the parties' "marital estate," the trial court awarded Sandra assets including the following:

> All right, title, and interest in and to fifty (50) percent of the United States Air Force, Army and Army Reserve disposable retired or retainer pay to be paid as a result of SANTOMERO V. RILEY's service in the United States Air Force, Army and Army Reserve, and fifty (50) percent of all increases in the United States Air Force, Army and Army Reserve disposable retirement or retainer pay due to cost of living or other reasons, if, as, and when received.

Santomero was not retired at the time of the 1996 Decree, was not eligible to retire, and served in the military for several more years, advancing his rank and pay.

As Santomero planned for retirement and retired in 2015, the Defense Financing and Accounting Service (DFAS) informed Santomero by letter that Sandra had applied for payment of a portion of his retired/retainer pay. The retiree account statement showed that DFAS concluded that Sandra was due fifty percent of Santomero's full retirement benefit, which included compensation for years of service during which they were not married to each other.

Santomero disagreed with DFAS's apportionment of his benefits and filed a petition for declaratory judgment regarding the proper amount of pay under the 1996 Decree in the same cause number as the 1996 Decree. He requested a declaration that all military retirement income he accrued after his divorce is his separate property, that the trial court lacked

jurisdiction to divest him of that separate property, and that the "portion of the *Final Decree of Divorce* signed by this Court on August 22, 1996, that purports to award 50% of SANTOMERO V. RILEY's Military Retirement to SANDRA F. RILEY only awards 50% of the retirement earned prior to the divorce." (Emphases in original). He also requested that the trial court sign a domestic relations order reflecting the proper division and directing DFAS to distribute his retirement benefits according to its declaratory judgment. In his First Amended Petition, he requested injunctive relief barring DFAS from paying Sandra half of his full retirement pay.

The trial court signed an Agreed Temporary Injunction on June 22, 2016, in which Sandra agreed she was restrained from spending "any sums over $500.00 per month" she received from DFAS as retirement pay for Santomero and that any sums over $500 would be held in constructive trust.

Santomero testified at a hearing in 2020 that he had served active and reserve duty in the military. He testified that he served on active duty from September 1971 through September 1975, then again from September 1983 through July 1990. Between those stints, he married Sandra. He also testified that he served in the reserves the last two years of their marriage from 1994 to 1996. Santomero testified that he returned to active duty in March 2002 and retired effective October 2015.

Sandra testified that she and Santomero were married on April 16, 1976—a full year before the date stated in the 1996 Decree. She agreed that Santomero's service between 1971 and 1975 preceded their marriage.

In its January 20, 2021 Order, the trial court found that it had continuing jurisdiction over the parties and to clarify the 1996 Decree and that good cause existed to clarify

3

the 1996 Decree. The court "clarified" the portion of Santomero's retirement awarded to Sandra by making the following findings:

- The parties were married for 173 months. At the time of the divorce, Santomero had served 48 months of active duty before the marriage and 86 months of reservist duty during the marriage that were creditable toward retirement. Sandra's community share of the retirement pay was based on fifty percent of the 86 months of creditable service earned divided by the 173 months of marriage.

- Santomero was not eligible for retirement when they divorced and his monthly reservist income was $360.06. Sandra's share of the retirement was fixed as of the date of the divorce. Her share of the retirement award would be "the calculated percentage of the pay of a military reservist with a monthly base pay rate of $360.06."

- Sandra violated the temporary injunction by having income taxes deducted from the gross retirement pay allocated to her by DFAS before it was deposited in the court-ordered trust account, then transferring herself $500 from the net deposit.

The court awarded Santomero judgment of $44,493.44, calculated by taking $196,545.98 (the gross retirement paid to Sandra by DFAS) less $36,500 (the total of the authorized $500 payments to Sandra under the injunction) less $115,552.54 (the trust account balance). In its findings of fact and conclusions of law, the court stated that it had awarded the trust-account balance to Santomero.

Among its findings of fact and conclusions of law signed February 22, 2021, the trial court found that the parties were married for 216 months. The court also concluded that it did not and does not have jurisdiction to allocate the separate property of one spouse to the other. It concluded that benefits related to Santomero's premarital military service were his separate property and that the award of benefits to Sandra based on that service violated the Texas Constitution by depriving him of his separate property. The court reached similar conclusions regarding benefits related to his post-divorce military service.

4

**DISCUSSION**

Sandra complains on appeal that the trial court lacked subject-matter jurisdiction to reinterpret the 1996 Decree's terms regarding the payment of the pension. She contends that the trial court lacked jurisdiction to decide whether the court previously made a mistake in its 1996 Decree and to decide whether the first thirteen years of Santomero's service are worth less than years fourteen through thirty-eight.

### A. Standard of review

The question of jurisdiction is an issue of law we review de novo. *Marshall v. Priess*, 99 S.W.3d 150, 156 (Tex. App.—Houston [14th Dist.] 2002, no. pet.) Seeking an order that alters or modifies a divorce decree's property division constitutes an impermissible collateral attack. *See* Tex. Fam. Code § 9.007(a), (b); *Hagen v. Hagen*, 282 S.W.3d 899, 902 (Tex. 2009); *see also Sydow v. Sydow*, No. 01-13-00511-CV, 2015 WL 1569950, at *3 (Tex. App.—Houston [1st Dist.] Apr. 7, 2015, no pet.) (mem. op.) ("A court may not amend, modify, alter, or change the division of property made or approved in the divorce decree after its plenary power expires."). A final, unambiguous divorce decree that disposes of all marital property bars relitigation even if the decree mischaracterizes or incorrectly divides the property. *Pearson v. Fillingim*, 332 S.W.3d 361, 364 (Tex. 2011); *Reiss v. Reiss*, 118 S.W.3d 439, 443 (Tex. 2003); *Baxter v. Ruddle*, 794 S.W.2d 761, 762–63 (Tex.1990).

However, a trial court retains continuing subject-matter jurisdiction to clarify and to enforce a divorce decree's property division. *See* Tex. Fam. Code §§ 9.002, .006, .008; *Pearson*, 332 S.W.3d at 363; *Howard v. Howard*, 490 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2016, pet. denied); *Marshall v. Priess*, 99 S.W.3d at 156. A party affected by a divorce decree may seek to enforce and clarify the decree's property division by filing an

5

enforcement and clarification motion. *See* Tex. Fam. Code §§ 9.001(a),.006(a); *Joyner v. Joyner*, 352 S.W.3d 746, 749 (Tex. App.—San Antonio 2011, no pet.). The trial court may render further orders to assist in the implementation of, or to clarify, its prior order. *See* Tex. Fam. Code §§ 9.006(a), .008(b); *Howard*, 490 S.W.3d at 185; *Marshall*, 99 S.W.3d at 156. We review a trial court's ruling on a post-divorce motion for enforcement or clarification of a divorce decree for an abuse of discretion. *Hollingsworth v. Hollingsworth*, 274 S.W.3d 811, 815 (Tex. App.—Dallas 2008, no pet.); *Gainous v. Gainous*, 219 S.W.3d 97, 103 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). A trial court abuses its discretion when it acts arbitrarily or unreasonably or without reference to any guiding rules or principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990).

## B. Trial court's post-decree jurisdiction

The time to request modification of the 1996 Decree, including by appellate remedies, expired long ago. The trial court's plenary power to modify the 1996 Decree expired in 1996. There was no appeal, writ of error, restricted appeal, or bill of review; the latest any of these remedies could have been filed was within four years of August 22, 1996, when the 1996 Decree was signed. *See Caldwell v. Barnes,* 975 S.W.2d 535, 538 (Tex. 1998) (citing Tex. Civ. Prac. & Rem. Code § 16.051) (bill of review); *see also* Tex. R. App. P. 26.1(a) (notice of appeal due 90 days after judgment signed if party timely files specified post-judgment motion); R. 26.3 (notice of appeal due 105 days after judgment signed); R. 26.1(c) (notice of appeal in restricted appeal due six months after judgment signed).[2] Santomero did not and does not claim that the trial court lacked jurisdiction in 1996.

---

[2] Like the restricted appeals that replaced them effective September 1, 1997, writs of error had to be brought within six months after the judgment was signed. *See* Tex. R. App.

6

Santomero contends that the 2021 Order is not an impermissible modification of the 1996 Decree and that, instead, he properly invoked the provisions of Family Code Chapter 9 providing for limited, post-judgment jurisdiction to clarify and enforce the decree. *See* Tex. Fam. Code § 9.006; *Gainous*, 219 S.W.3d at 108. The Family Code provides, "The court may specify more precisely the manner of effecting the property division previously made or approved if the substantive division of property is not altered or changed." Tex. Fam. Code. § 9.006(b). The Family Code also provides as follows:

> (a) A court may not amend, modify, alter, or change the division of property made or approved in the decree of divorce or annulment. An order to enforce the division is limited to an order to assist in the implementation of or to clarify the prior order and may not alter or change the substantive division of property.
>
> (b) An order under this section that amends, modifies, alters, or changes the actual, substantive division of property made or approved in a final decree of divorce or annulment is beyond the power of the divorce court and is unenforceable.

*Id.* § 9.007. Under these provisions, trial courts "may more precisely specify how the previously ordered property division will be implemented so long as the substantive division of the property is not altered." *Marshall*, 99 S.W.3d at 156; *see also* Tex. Fam. Code § 9.006(b); *Dechon v. Dechon*, 909 S.W.2d 950, 956 (Tex. App.—El Paso 1995, no writ). If the original form of the property division is not specific enough to be enforceable by contempt, the court may render a clarifying order setting forth the specific terms to enforce compliance with the original division of property. Tex. Fam. Code § 9.008(b).

---

P. 30; former Tex. R. App. P. 45; *General Elec. Co. v. Falcon Ridge Apartments*, 811 S.W.2d 942, 943 (Tex. 1991); *Brown v. Brookshires Grocery Store*, 10 S.W.3d 351, 353 (Tex. App.—Dallas 1999, pet. denied).

Santomero requested relief through a declaratory judgment under Civil Practice and Remedies Code Chapter 37, and Sandra argues that the trial court lacked jurisdiction over the petition for declaratory judgment. But Santomero requested more than a declaratory judgment. He requested a declaration that all military retirement income he accrued after his divorce is his separate property, that the trial court lacked jurisdiction to divest him of that separate property, and that the 1996 Decree awarded Sandra half of that part of his retirement earned before the divorce. Further, he asked that the trial court sign a domestic relations order reflecting the proper division and directing DFAS to distribute his retirement benefits according to its declaratory judgment. He further requested injunctive relief that would make DFAS payments to Sandra be based on his retirement pay earned at the time of divorce rather than on his full service through 2015. The trial court had the power to consider these requests to the extent they requested clarification and enforcement of the original decree under Family Code Sections 9.006 and 9.007.

### C. Application to 2021 Order

We will examine the various "clarifications" made in the 2021 Order to see if they are within the scope of the trial court's limited post-decree jurisdiction under the Family Code.

### 1. Length of the parties' marriage and Santomero's creditable service

In the 1996 Decree, the trial court expressly found that the parties "were originally married on April 16, 1977, and that marriage lasted for at least 18 years and 11 months

8

or more, during which time SANTOMERO V. RILEY served at least 13 years and 9 months or more of creditable service toward retirement."[3]

In its 2021 Order, the trial court made findings that conflict with those clear findings. In contrast to the at least 227 months of marriage found in the 1996 Decree, the trial court in its 2021 Order found that "the parties were married for 173 months," which equates to 14 years and 5 months of marriage; in its findings of fact in support of the 2021 Order, the trial court found that the parties were married for 216 months. Further, in contrast to the at least 165 months of service found in the 1996 Decree, the trial court in its 2021 Order found that Santomero "had served 48 months of credi[ta]ble active duty military service towards retirement prior to the date of marriage and served 86 months of credi[ta]ble reservist duty military service towards retirement during the marriage. The court clarifies the credi[ta]ble service toward retirement earned during marriage to be 86 months." Even when combined, the creditable service time found in the 2021 Order totals 134 months, an amount that conflicts with the findings in the 1996 Decree. These 2021 findings are beyond the scope of "clarification." Even if the original findings were inaccurate, they are not void. The trial court did not have jurisdiction in 2021 to redetermine the length of the marriage or the amount of creditable service toward retirement accrued during those years. *Baxter*, 794 S.W.2d at 762-63 (errors other than lack of jurisdiction render judgment merely voidable and must be attacked within prescribed time limits). The trial court exceeded its power to clarify and enforce the 1996 Decree by making these findings in 2021.

---

[3] The decree recites that the case came on for hearing on April 3, 1996, so the court may have calculated the length of the marriage as of that date rather than the August 22, 1996 date that it signed the decree.

9

Santomero argues, however, that the 2021 Order corrects a fundamental error in the 1996 Decree's reclassification of his separate property—the share of retirement benefits attributable to his forty-eight months of service accrued before the marriage—as community property subject to division in the divorce decree. But that action also exceeded the scope of the power to clarify the decree. All property held by the spouses at the time of divorce is presumed to be community property and each spouse has the burden of proving by clear and convincing evidence that any asset is separate property. Tex. Fam. Code § 3.003(a), (b); *Barnett v. Barnett*, 67 S.W.3d 107, 111 (Tex. 2001); *Stavinoha v. Stavinoha*, 126 S.W.3d 604, 607 (Tex. App.—Houston [14th Dist.] 2004, no pet.). The trial court's 1996 finding that Santomero's 165 creditable months of service occurred during the marriage was not challenged and became final. *See Baxter*, 794 S.W.2d at 762-63. Res judicata applies and bars collateral attacks even if the divorce decree improperly divided property. *Id.* at 762; *Gainous*, 219 S.W.3d at 105; *see also Reiss*, 118 S.W.3d at 443. A property division awarding a spouse the other spouse's separate property may be erroneous and unconstitutional, but it is not void. *Gainous*, 219 S.W.3d at 110. An improper apportionment of retirement benefits in a divorce decree, once final, is not subject to collateral attack and will be enforced absent a flaw in the original court's exercise of jurisdiction. *Baxter*, 794 S.W.2d at 762-63. Accordingly, we conclude that the trial court lacked jurisdiction to make factual findings in the 2021 Order regarding the length of the marriage and the amount of creditable service toward retirement that contradict rather than clarify the 1996 Decree. We vacate these findings.

We also vacate the further 2021 "clarification" that "the community portion awarded to Sandra F. Riley is 50% of the resulting sum of 86 months of credible service toward

retirement earned during marriage divided by 173 months." This calculation relies on the vacated findings, so we also vacate this calculation.[4]

### 2. Finding of income on the date of divorce

In its 2021 Order, the trial court found that "on the date of divorce, Santomero Riley was not eligible for military retirement benefits and that his gross monthly military reservist income was $360.06." We see no similar findings needing clarification in the 1996 Decree. The finding of his reservist pay was a new finding, not a clarification of the 1996 Decree. The trial court lacked jurisdiction to make these findings because the new findings formed the basis of a modification of the payments due under the 1996 Decree.

### 3. Fixing benefit as of the date of the divorce

In its 2021 Order, the Court "clarifie[d] the timing of the award of Santomero V. Riley's retirement to Sandra F. Riley to be fixed as of the date of the divorce and such retirement award would be the calculated percentage of the pay of a military reservist with a monthly base pay rate of $360.06." This contrasts with the award in the 1996 Decree:

> All right, title, and interest in and to fifty (50) percent of the United States Air Force, Army and Army Reserve disposable retired or retainer pay to be paid as a result of SANTOMERO V. RILEY's service in the United States Air Force, Army and Army Reserve, and fifty (50) percent of all increases in the United States Air

---

[4] We note further that the trial court's formula in the 2021 Order used as the numerator the years of duty served during marriage and as the denominator the years of marriage, unlike the Texas Supreme Court's formula using as the denominator the overall years of duty served. *See Berry v. Berry*, 647 S.W.2d 945, 947 (Tex. 1983) ("benefits are to be apportioned to the spouses based upon the value of the community's interest at the time of divorce"); *see also In re Marriage of Santopadre*, No. 05-07-00027-CV, 2008 WL 3844517, at *3 (Tex. App.—Dallas Aug. 19, 2008, no pet.) (mem. op.). The trial court's formula computed the percentage of the married years during which Santomero served, while the *Berry* formula computes the percentage of the spouse's creditable service that occurred during the marriage.

Force, Army and Army Reserve disposable retirement or retainer pay due to cost of living or other reasons, if, as, and when received.

Sandra contends that the trial court's 2021 Order impermissibly modified the 1996 Decree because the 1996 Decree plainly awards her half of all of Santomero's pension benefits; Santomero contends that the 1996 Decree could not distribute retirement benefits that are based on service and increased income earned after the divorce because such income is his separate property.

The Texas Supreme Court has expressly held that divesting a party of separate property does not render a judgment void, only voidable and reversible on appeal. *Reiss*, 118 S.W.3d. at 443. That court held that unambiguous decrees dividing pension benefits to be paid later cannot be "clarified" to limit the scope of the pension divided to benefits accrued before the divorce; though a trial court's incorrect characterization of property on divorce that affects the just-and-right division of the community estate is grounds for reversal on appeal, the property cannot be recharacterized after the time for appeal has passed. *See id.* at 440-42; *Shanks v. Treadway*, 110 S.W.3d 444, 447-48 (Tex. 2003). The fact patterns in *Reiss* and *Shanks* are strikingly similar to the facts in this case.

In *Reiss*, the parties married in 1956, the husband began work for the pension provider in 1957, the parties divorced in 1980, and the husband retired from the pension provider in 1998. 118 S.W.3d at 440. The 1980 decree stated as follows:

It is further ORDERED, ADJUDGED AND DECREED that if and when Respondent, Edwin F. Reiss, retires and/or receives a pension from Goodyear Tire & Rubber Company, or for any other reason becomes entitled to receive retirement or pension benefits from Goodyear Tire & Rubber Company, then, and in such event, [Gloria] shall receive fifty percent (50%) of such retirement or

12

> pension benefit to which Edwin F. Reiss is entitled to receive from Goodyear Tire & Rubber Company.

*Id.* Non-Goodyear employee Gloria sought and obtained a post-judgment Qualified Domestic Relations Order (QDRO) that she was entitled to half the total benefits Edwin earned under the pension plan, including sums accrued after the divorce. *Id.* at 440-41. The court of appeals reversed, concluding that the only property the divorce decree purported to divide was community property. *Id.* at 441 (citing *Reiss v. Reiss*, 40 S.W.3d 605, 608 (Tex. App.—Houston [1st Dist.] 2001) (*Reiss I*). The court of appeals held that "the divorce decree required Gloria's half of the community-property portion of Edwin's retirement benefits to be valued as of the receipt date, rather than the divorce date." *Reiss I*, 40 S.W.3d at 613. However, the Texas Supreme Court reversed, holding that courts must interpret unambiguous language literally and that the decree's plain language "unequivocally awards Gloria half of Edwin's total retirement benefits under the plan, regardless of when they accrued." 118 S.W.3d at 442. The Texas Supreme Court stated that the intricacies of dividing pension plans that involve both separate and community property indicate that interpreting such divisions is not as simple as determining whether the trial court intended to divide only community property. *Id.*

Using a similar theory in *Shanks*, the Texas Supreme Court affirmed a court of appeals' reversal of a trial court's post-judgment QDRO that improperly fixed a decree's division of pension proceeds at the date of divorce. 110 S.W.3d at 448. Husband George began working for the pension provider during the marriage in 1966 and began participating in the retirement program in 1967, the couple divorced in 1981, and George participated in the program until 1998. *Id.* at 445. The 1981 divorce decree provided as follows:

13

[Kenda] is awarded a "pro-rata interest" (as hereinafter defined) of any and all sums received or paid to [George] from such pension plan and such sum or sums shall be payable to [Kenda] if, as and when paid by American Airlines or the trustee of such plan to [George] as pension or retirement employee benefits existing because of [George's] employment.

IT IS DECREED that [Kenda's] "pro-rata interest" shall be defined as that sum of money equal to 25% of the total sum or sums paid or to be paid to [George] from such pension or retirement plan.

*Id.* The retirement plan included both a defined-benefit plan and a defined-contribution plan. When George retired, the trial court signed a QDRO for each plan valuing them as of the date of divorce. *Id.* at 445-46. The court of appeals reversed the judgment, holding that the QDROs impermissibly altered the decree's property division. *Id.* at 446. The court remanded the case to the district court to enter a revised QDRO awarding Kenda a twenty-five percent interest in the entire amount to be paid to George as retirement benefits. *Id.* The Texas Supreme Court affirmed, concluding that the decree plainly awarded Kenda twenty-five percent of any and all sums the pension plan received or paid to George. *Id.* at 447. The Texas Supreme Court affirmed the court of appeals' determination that the decree awarded sums received under the plan, not an interest in presently accrued benefits under the plan. *Id.* at 448. The court used language that could describe this case as well:

The fact that the plan's value may have increased since the divorce does not affect the decree's plain language, which simply cannot reasonably be construed to award Kenda an interest only in the plan benefits that had accrued on the date of divorce. Whether intentional or not, the court that entered the decree failed to limit the community interest pursuant to the *Taggart* apportionment fraction and instead clearly gave Kenda a twenty-five percent interest in the *total* amount (whatever that might be) to be paid to George under the plan.

14

*Id.* The Texas Supreme Court held that, when considering a collateral attack on the decree, "we must interpret the decree to determine not what the trial court should have done but, if possible, what the trial court actually did." *Id.* Even though the trial court misapplied the law in its original decree by divesting George of separate property, the remedy for that was by appeal; when the QDROs were requested, the trial court had no power to alter the terms of the decree and limit Kenda to a twenty-five percent interest in the benefits that had accrued under the plan at the time of the divorce. *Id.* at 449.

Our analysis is controlled by the Texas Supreme Court's holdings. The 1996 Decree unambiguously awarded fifty percent of the retirement benefits to be paid as a result of Santomero's service, plus fifty percent of all increases in that pay due to cost of living or other reasons, if, as, and when received. The 1996 Decree did not limit the amounts awarded to amounts earned or payable on that date. Even if the trial court erred in the 1996 Decree by awarding pension benefits based on Santomero's earnings outside the marriage, the remedy was by appeal. The trial court's "clarification" purporting to limit the award to amounts due at the time of divorce is an improper modification of the decree, not a clarification. Because the trial court lacked jurisdiction to make this modification, we vacate the portions of the 2021 Order that modify the timing of the award of Santomero's retirement to be fixed as of the date of divorce and that calculate it as a percentage of the pay of a military reservist with a monthly base pay rate of $360.06.

### 4. Damages and judgment award

Because the damage award concerning the amounts deposited in the trust account is based on the improper modifications made in the 2021 Order, we conclude that the damage award was not supported by evidence or law and was an abuse of discretion. We reverse that

award and related remedies, such as the requirements that Sandra transfer the trust account to Santomero and pay him damages, and that DFAS offset benefits payments to Sandra against the judgment in favor of Santomero. We render judgment that the amounts deposited in the trust account belong to Sandra.

## CONCLUSION

Concluding that the trial court acted without jurisdiction by modifying the 2021 Order's division of the pension rather than clarifying it, we vacate these portions of the order:

> The Court finds that the parties were married for 173 months. At the time of the divorce, Santomero V. Riley had served 48 months of credible active duty military service towards retirement prior to the date of marriage and served 86 months of credible reservist duty military service towards retirement during the marriage. The Court clarifies the credible service toward retirement earned during marriage to be 86 months. The Court clarifies that the community portion awarded to Sandra F. Riley is 50% of the resulting sum of 86 months of credible service toward retirement earned during marriage divided by 173 months.

> The Court further finds that on the date of divorce, Santomero Riley was not eligible for military retirement benefits and that his gross monthly military reservist income was $360.06. The Court clarifies the timing of the award of Santomero V. Riley's retirement to Sandra F. Riley to be fixed as of the date of the divorce and such retirement award would be the calculated percentage of the pay of a military reservist with a monthly base pay rate of $360.06.

We also vacate findings of fact and conclusions of law related to these paragraphs that exceeded the trial court's clarification jurisdiction. We reverse those portions of the order related to the trust account, render judgment that Santomero Riley take nothing by his claim for the amounts in the trust account created pursuant to the June 22, 2016 Agreed Temporary Injunction, and render judgment that Sandra Riley is awarded the amounts remaining in that trust account.

16

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Vacated in Part, Reversed and Rendered in Part

Filed:   December 29, 2022

17