**Nick Davis BOYETT, Appellant,**

v.

**Jo Ann BOYETT, Appellee.**

**No. B14–89–00953–CV.**

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 11, 1990.

D. Channing Bradshaw, Pasadena, for appellant.

Bruce A. Baughman, Baytown, for appellee.

Before ROBERTSON, SEARS and DRAUGHN, JJ.

## OPINION

DRAUGHN, Justice.

This is an action for reformation of a divorce decree based on an agreed property settlement. The divorce decree, in accordance with the agreement of the parties, awarded the appellee-wife fifty percent of her husband's total retirement benefits commencing on the date of his retirement. The appellant-husband, alleging mutual mistake, argues that the trial court erroneously failed to reform the decree so as to limit the wife's part to one-half of the community interest in the husband's retirement benefits. We affirm.

Appellant brings one point of error claiming that the trial court erred in entering judgment without correcting the value of appellant's retirement benefits in the decree. Appellant argues the evidence established that the parties intended to divide only the community interest in his retirement benefits as of the date of the divorce; and the decree, as signed, resulted in an improper divestment of his separate property benefits which will accrue based on his future employment. The provision of the decree in issue is as follows:

This Decree of Divorce shall be a "qualified domestic relations order" pursuant to section 414(p) of the Internal Revenue Code. In compliance with that provision, the following is ORDERED and specified:

1. This qualified domestic relations order assigns a portion of the benefits payable in the Pension and Retirement Plan ("the Plan") at E.I. duPont de Nemours and Company, Incorporated, to JO ANN BOYETT in recognition of the existence of her marital rights in NICK DAVIS BOYETT's retirement benefits as defined by Texas law in *Berry v. Berry*, 647 S.W.2d 945 (Tex.1983).

.    .    .    .    .

4. On the date of this divorce, Participant's *present accrued benefit* for retirement at normal retirement age under the Plan with a joint and survivor annuity benefit is:

At age 58—$1,721.00 per month;
At age 62—$2,618.00 per month;
At age 65—$2,859.00 per month.

5. As part of a just and right division of the estate of the parties, the Court awards, assigns, and grants to Alternate Payee [Jo Ann Boyett] fifty percent (50%) of Participant's present accrued benefit.... Alternate Payee shall have the right to elect any form of benefits permitted by the Plan as of the date Alternate Payee elects to begin receiving benefits.

Appellant, who was 41 years old at the time of divorce, argues that the numbers listed in the decree actually represent the total projected value of his retirement plan which will only accrue if appellant continues his employment until he reaches retirement age. He alleges that the correct discounted "present accrued benefit" of his retirement plan would be as follows:

At age 50—$256.00 per month;
At age 65—$1,022.00 per month.

■ Generally, agreed judgments, once rendered, are contracts between the parties that excuse error and operate to end all controversy between the parties. *Wagner v. Warnasch*, 156 Tex. 334, 339, 295 S.W.2d 890, 893 (1956). However, appellant correctly observes that an agreed judgment can be reformed for mutual mistake in the underlying agreement. To be entitled to reformation, a party must prove that there has been "a definite agreement between the parties that has been misstated in the written memorandum because of a mistake common to both contracting parties." *Champlin Oil & Refining Co. v. Chastain*, 403 S.W.2d 376, 382 (Tex.1965). Marital property agreements, even if incorporated into a final divorce decree, are treated as contracts and the law of contracts then governs interpretation of the decree's legal force and meaning. *Allen v. Allen*, 717 S.W.2d 311, 313 (Tex.1986).

Appellant contends that the incorporation of the incorrect value of his retirement fund makes the decree unenforceable. Labeling appellant's total future monthly retirement payment as his "present accrued benefit" created a latent ambiguity in the decree. Further, stating that the award was "in recognition of the existence of [appellee's] marital rights in [appellant's] retirement benefits as defined in *Berry v. Berry*" creates another ambiguity as *Berry* expressly disallows any award of post-divorce retirement benefits by the court as an improper invasion of separate property. *Berry v. Berry*, 647 S.W.2d 945, 947 (Tex. 1983). Resolution of the ambiguity turns on the intentions of the parties and the surrounding circumstances. *Hutchings v. Bates*, 406 S.W.2d 419, 420 (Tex.1966). Extrinsic evidence is admissible to clarify the surrounding circumstances. *Johnson v. Johnson*, 572 S.W.2d 364, 366 (Tex.Civ. App.—Amarillo 1978, no writ).

■ Appellant's contentions, if true, clearly show a unilateral mistake on his part in providing the specific projected monthly payments, which represent the full future value of his retirement account, to his attorney for negotiation purposes. However, there is no evidence in the record at the hearing on appellant's motion to repudiate that the appellee agreed to receive only her community interest in the plan. Appellee testified that it was the agreement of the parties that she would receive one-half of appellant's monthly retirement payments, as represented to her, whenever he became eligible for them. There is no dispute that she was furnished the specific valuations enumerated in the decree, of which she was to receive one-half when they were paid, and it was on the basis of these specific amounts that she consented to the agreement. The fact that the figures furnished to appellee may have been erroneously referred to as appellant's "present accrued benefit" is of no consequence. There is no evidence to show that she would have consented to the considerably lower monthly amounts represented by the present community value of the payments. To the contrary, we find the wife's testimony reflects that she expected to receive one-half of the husband's total retirement benefits and that her acceptance of the agreement was grounded on receiving one-half of these specific monthly payments furnished by her husband. Supportive of this conclusion is the fact that she would have been entitled to the lesser monthly retirement payments as her portion of the community estate without the necessity of any agreement on her part. Also, her testimony that she never inquired as to the present discounted value of the retirement benefits representing the community interest in the fund buttresses the conclusion that she was persuaded to accept the agreement because of the specific amounts presented to her.

Consequently, appellant's contention that appellee's share of his retirement benefits should be reduced due to a mutual mistake as to their correct value finds no support in the record. What is reflected in the record is ample testimonial evidence of a consensual agreement between the parties to equally divide the specific monthly pension amounts as set out in the final decree signed by the trial judge. *Cluck v. Cluck,* 699 S.W.2d 246, 249 (Tex.App.—San Antonio 1985, writ ref'd n.r.e.).

■ Appellant argues further that it was an impermissible divestment of his separate property to award his wife one-half of his monthly retirement payments which included post-divorce increases to his retirement fund. *See Berry v. Berry,* 647 S.W.2d 945 (Tex.1983); *Cameron v. Cameron,* 641 S.W.2d 210 (Tex.1982); *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex. 1977). Appellant's reliance on these cases is misplaced. Divestiture of separate property is not allowed when the parties' community estate is divided by *the court.* A *"judicial* divestiture of separate property would essentially disregard the constitutionally mandated distinction" between community and separate property. *Cameron,* 641 S.W.2d at 213 (emphasis added). Here, however, we have an agreed property settlement.

■ Appellant's position finds little precedential support in case law. Rather, parties to a divorce are free to bargain away their separate property in settlement agreements. *Walker v. Walker,* 691 S.W.2d 102, 105 (Tex.App.—San Antonio 1985, no writ); *Simpson v. Simpson,* 387 S.W.2d 717, 720 (Tex.Civ.App.—Eastland 1965, no writ). The Texas Family Code authorizes written agreements concerning the division of a couple's property and liabilities and, in the subsequent divorce proceeding, the terms of the agreement are binding on the court unless it finds that the agreement was not just and fair. TEX.FAM. CODE ANN. § 3.631 (Vernon Supp.1990); *Patino v. Patino,* 687 S.W.2d 799, 802 (Tex.App.—San Antonio 1985, no writ). Thus, with a binding settlement agreement before it, the court may divide the estates of the parties by setting forth the property settlement agreement in the decree or incorporating the agreement by reference into the decree. *McCaskill v. McCaskill,* 761 S.W.2d 470, 473 (Tex.App.—Corpus Christi 1988, writ denied). Here the court

did the former finding the agreement to be just and fair and we find no abuse of discretion in his decision.

■ There can be no claims of unconstitutional divestment of separate property when stipulations or agreed settlements are before the trial court. Court approval of such agreements does not operate as a divestiture of a party's separate property. The court's approval and signature merely ratifies and confirms the prior actions of the parties in so dividing their property. *Simpson,* 387 S.W.2d at 720. In this regard, the Texas Supreme Court has held that court approval of a settlement agreement granting future support payments to the wife should not be invalidated as alimony. *Francis v. Francis,* 412 S.W.2d 29, 33 (Tex.1967).

■ There is sufficient evidence in the record to find that the parties intended to enter into a binding settlement agreement and that the divorce decree reflected that agreement. Appellant's belated assertion that his retirement benefits were incorrectly valued, while perhaps true, does not change the final result. He may well have made a mistake, but that does not make the mistake mutual and binding on his wife. The appellant has shown no evidence of mutual mistake that would merit a reformation. We overrule appellant's point of error and affirm the judgment.