Thomas v. Thomas 
















IN THE
TENTH COURT OF APPEALS
 

No. 10-93-158-CV

Â Â Â Â Â HAROLD RAY THOMAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant
Â Â Â Â Â v.

Â Â Â Â Â RUTH ANN THOMAS,
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
 

From the 249th District Court
Johnson County, Texas
Trial Court # 5068-93
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

O P I N I O N
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 

Â Â Â Â Â Â The court granted Ruth Ann Thomas and Harold Ray Thomas an agreed divorce, divided their
property according to an agreed property settlement, and changed Ruth Ann's surname to Neel. 
Harold attacks the judgment in five points of error, claiming that the court erred by failing to
divide a bank account and a business owned and operated by Ruth Ann, awarding her a house as
separate property when there was insufficient evidence to support the award, granting the divorce
on insufficient evidence, and approving the property division without discovering that he had not
consented to the judgment. We affirm.
Â Â Â Â Â Â Harold and Ruth Ann married on May 17, 1990 and separated on January 30, 1993. Ruth
Ann filed for divorce on February 5, 1993. At the final hearing on the divorce, held on May 28,
1993, the parties presented the court with an agreed divorce decree. Ruth Ann and Harold each
signed the decree as "approved as to form and to content." Both parties testified at the hearing. 
During Ruth Ann's testimony, her attorney reviewed the provisions of the agreed decree and asked
if she was "in agreement with all that, and you're asking the Court to approve the decree that
we've submitted." She responded "Yes, sir."
Â Â Â Â Â Â When Harold testified, his attorney asked, "It's my understanding that while you're not the
least bit anxious for this divorce to be granted, assuming that it is, then you wish the Judge to
enter the decree awarding the property as it's been set out; is that correct?" Although Harold did
not verbally respond to the question, the statement of facts indicates that, "Witness nods head." 
In his brief, Harold agrees that he nodded his head in response to this question. At the conclusion
of the hearing the court approved the parties' agreement and granted the divorce. The court
signed the judgment on the same day.
Â Â Â Â Â Â On June 28, Harold moved for a new trial, requesting that the court set aside the divorce
decree because he had not had adequate time to confer with his attorney and, so, had not been able
to tell the attorney that he did not wish to consent to the agreed decree. Additionally, he alleged
that the decree did not divide all of the property. After a hearing the court denied Harold's
motion.
Â Â Â Â Â Â Although the general rule is that an agreed judgment waives all error in rendering the
judgment, a party's consent to a judgment can be attacked on appeal. See Burnaman v. Heaton,
150 Tex. 333, 240 S.W.2d 288, 291-92 (1951). In point four, Harold claims that he did not
consent to the judgment. He admits, however, that he nodded his head in agreement when his
counsel inquired whether he was asking the court to divide the property in accordance with the
agreed property division. Thus, to prevail on this point, he must show that the court had
information which was "reasonably calculated" to cause it to inquire concerning his consent to the
judgment and that the inquiry would have disclosed his lack of consent. See id. at 292. 
Â Â Â Â Â Â Essentially, he argues that the remark made by his attorney while questioning him about
whether he consented to the property divisionâi.e., that he was "not the least bit anxious" to get
the divorceâshould have alerted the court that further inquiry was needed concerning his consent. 
We disagree. That he was "anxious" about the divorce being granted would not reasonably cause
the court to question his consent to the decree, especially in light of the undisputed evidence that
he clearly evidenced his consent by affirmatively nodding his head and by personally signing the
judgment. The court did not abuse its discretion in denying the motion for a new trial based on
a lack of consent. Point four is overruled.
Â Â Â Â Â Â Agreed judgments excuse error and operate to end the controversy between the parties. See
Ex parte Gorena, 595 S.W.2d 841, 844 (Tex. 1979); Boyett v. Boyett, 799 S.W.2d 360, 362 (Tex.
App.âHouston [14th Dist.] 1990, no writ). Even if there is error in an agreed judgment, it
cannot be attacked on appeal. See Boyett, 799 S.W.2d at 363-64. Thus, because he agreed to the
judgment, Harold cannot attack the division of the property or the grant of the divorce. Points
one, two, three and five, all of which attack the judgment, are overruled.
Â Â Â Â Â Â If, as Harold argues, he has an unadjudicated claim in Ruth Ann's separate property business,
his remedy is to file suit to have the court divide any undivided property.


 See Tex. Fam. Code
Ann. Â§ 3.90(a) (Vernon 1993).
Â Â Â Â Â Â The judgment is affirmed.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â BOB L. THOMAS
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice

Before Chief Justice Thomas,
Â Â Â Â Â Â Â Â Â Â Justice Cummings, and
Â Â Â Â Â Â Â Â Â Â Justice Vance
Affirmed
Opinion delivered and filed March 30, 1994
Do not publish 



, 40 F.3d
688, 692 (4th Cir. 1994); Trice v. United States, 662 A.2d 891, 895
(D.C. 1995); People v. Tritchler, 55 Cal. Rptr. 2d 650, 657 (Cal. Ct.
App. 1996).  Concern for public safety, argued these Courts, is still present
and continues to trump any concern regarding the suspectÂs knowledge of his
rights. Â DeSantis, 870 F.2d at 540-41.Â  However, the exception extends only
as far as the legitimate concern for safety. Â Quarles, 467 U.S. at 657-59, 104 S. Ct. at 2632-34.Â  Where, as here, the suspect cooperates and the weapon is
found, the need for reliance on this exception has ended. Â The situation is
governed by traditional Miranda rules. Â See Berkemer v. McCarty,
468 U.S. 420, 429 n.10, 104 S. Ct. 3138, 3145 n.10, 82 L. Ed. 2d 317 (1984).Â  Under
Miranda, where an accused is subjected to a custodial interrogation, he
may properly invoke his right to have counsel present for that interrogation. Â Miranda,
384 U.S. at 444, 86 S. Ct. at 1612. Â A suspectÂs effective invocation of
his right to counsel must be Âscrupulously honored.ÂÂ  See Michigan v. Mosley,
423 U.S. 96, 103, 96 S. Ct. 321, 326, 46 L. Ed. 2d 313 (1975).Â  Thus, while the
police had the authority not to Mirandize Russell, his invocation of his
constitutional rights could not be ignored because the exigent circumstances had
passed.

Â Â Â Â Â Â Â Â Â  Having established this was a
custodial interrogation implicating the Fifth Amendment, we now turn to the
question of whether RussellÂs statement, ÂI need my cell phone to call my
lawyerÂ was an effective invocation of his right to counsel. Â Once a putative
defendant has properly invoked his right to have counsel present during
interrogation, questioning must cease unless initiated by the accused or unless
the questioning is conducted in the presence of counsel. Â Miranda, 384 U.S. at 474, 86 S. Ct. at 1628; Edwards, 451 U.S. at 484-85, 101 S. Ct. at 1884-85. Â A
subsequent valid waiver of the right to counsel can be established only upon a
showing that: 1) the accused initiated the communication with law enforcement,
and 2) the accused gave a knowing and intelligent waiver of the right he had previously
invoked.Â  Smith v. Illinois, 469 U.S. 91, 95, 105 S. Ct. 490, 492-93, 83
L. Ed. 2d 488 (1984); Cross v. State, 144 S.W.3d 521, 527 (Tex. Crim. App. 2004).

Triggering the Âbright-line constitutional ruleÂ
of Edwards requires a clear and unambiguous statement requesting the
assistance of counsel. Â Davis v. United States, 512 U.S. 452, 459, 114 S. Ct. 2350, 2355, 129 L. Ed. 2d 362 (1994); Dinkins v. State, 894 S.W.2d
330, 351 (Tex. Crim. App. 1995).Â  Whether a statement properly invokes the
right to counsel is an objective inquiry asking if the request can reasonably
be construed as an expression of a desire of an attorneyÂs assistance. Â Davis,
512 U.S. at 459, 114 S. Ct. at 2355; Dinkins, 894 S.W.2d at 351.Â  This
review of the alleged invocation of the right to counsel looks to the totality
of the circumstances.Â  Dinkins, 894 S.W.2d at 351.

Â Â Â Â Â Â Â Â Â  RussellÂs statement that he needed his
cell phone to call his lawyer was a clear and unequivocal invocation of his
right to counsel. Â No magic words are required to invoke that right.Â  Dinkins,
894 S.W.2d at 352.Â  Similar requests couched as questions or prefaced with
ambivalent qualifiers have been rejected as ineffective.Â  See Davis, 512
 U.S. at 462, 114 S. Ct. at 2357 (ÂMaybe I should talked to a lawyer.Â); Saldana
v. State, 59 S.W.3d 703, 710-711 (Tex. App.ÂAustin 2001, no pet.) (ÂIf I wanted
a lawyer, where would a lawyer come from?Â); Flores v. State, 30 S.W.3d
29, 34 (Tex. App.ÂSan Antonio 2000, pet. refÂd) (ÂWill you allow me to speak
with my attorney before?Â). Â Such ambivalence, however, was not present here.Â  See
Jamail v. State, 787 S.W.2d 372, 375 (Tex. Crim. App. 1990) (noting ÂNow
itÂs time for me to call my lawyer,Â was effective); In re H.V., 179
S.W.3d 746, 755-56 (Tex. App.ÂFt. Worth 2005, no pet.) (ÂI want to call my
mother. Â I want to ask her for an attorney.Â effective for a minor).Â  This
conclusion is buttressed by Officer HendersonÂs response, ÂIÂm not going to ask
you any questions without your lawyer.ÂÂ  Clearly, he understood Russell to be
asking for an attorney.Â  Thus, the waiver of rights obtained by police before
RussellÂs statement is not knowing and intelligent because Russell had
previously invoked his right to counsel and did not initiate the subsequent
communication with the officers.Â  Edwards, 451 U.S. at 484-85, 101 S. Ct. at 1884-85.

Â Â Â Â Â Â Â Â Â  Therefore, we hold that the trial
court erred in concluding that the police question regarding the knife was not
a custodial interrogation.Â  Russell clearly and unequivocally invoked his right
to counsel, and in violation of the no-initiation rule of Edwards, the
police obtained a waiver of RussellÂs rights. Â The court abused its discretion
by overruling RussellÂs motion to suppress.

Harmful Error

Â Â Â Â Â Â Â Â Â  We next must determine whether this
error harmed Russell. Â Where, as here, the appellate record in a criminal case
reveals constitutional error, we must reverse a judgment unless we determine
beyond a reasonable doubt the error did not contribute to the conviction or
punishment. Â Tex. R. App. P.
44.2(a).Â  We begin by reviewing the trial record to determine how the State
used this confession.

Â Â Â Â Â Â Â Â Â  The State offered ample evidence of
RussellÂs guilt independent of his confession. Â The arresting officer testified
to having seen Russell flee the scene.Â  The knife and RussellÂs statement
regarding its location were properly admitted. Â Three witnesses testified as to
RussellÂs having been upset at the victim, and additional witnesses testified to
the details of the stabbing.

Â Â Â Â Â Â Â Â Â  Nevertheless, the State relied upon
RussellÂs confession extensively, both during its case-in-chief and during
closing arguments.Â  Initially, the State played a recording of the confession
for the jury during its direct examination of the detective who interrogated
Russell. Â Russell chose to take the stand and attempt to rebut the statements
therein.[3]Â  The
State then extensively cross-examined Russell with his confession, repeatedly
questioning Russell as to factually incorrect statements which he originally
gave to police. Â In closing arguments at the guilt-innocence phase, portions of
RussellÂs statement were again played for the jury, and the State concentrated
on discrepancies between RussellÂs confession and his trial testimony.Â  Â[A]
true word could not come out of his mouth in that statement,Â stated the prosecutor.Â 
This characterization of Russell as an untrustworthy liar continued in the
punishment phase when the State told the jury, Â[t]hat is the reason itÂs not a
probation case. Â Because youÂve got to take a chance on a guy who will not tell
you the truth at all.Â

Â Â Â Â Â Â Â Â Â  The trial court instructed the jury on
the affirmative defense of self-defense and the lesser charge of manslaughter. Â The
jury rejected these arguments and found Russell guilty of murder. Â In the
punishment phase, the jury found this was a crime of passion, assessing
punishment at ten yearsÂ imprisonment. Â The jury rejected RussellÂs request for
community supervision or a lesser term of imprisonment.

The decision on harmlessness is not determined solely
on the basis of whether there is sufficient evidence, independent of RussellÂs
inadmissible statement, for a reasonable jury to reach the same conclusion.Â  Satterwhite
v. Texas, 486 U.S. 249, 258-59, 108 S. Ct. 1792, 1798, 100 L. Ed. 2d 284
(1988).Â  Instead, the question is whether the record shows, beyond a reasonable
doubt, that the error complained of did not contribute to the verdict
obtained.Â  Id.; McCarthy v. State, 65 S.W.3d 47, 55 (Tex. Crim. App. 2001).Â  In assessing harm, we consider:

Â·Â Â Â Â Â Â Â 
the source and the nature of
the error;

Â 

Â·Â Â Â Â Â Â Â 
the extent to which the
State emphasized it;

Â 

Â·Â Â Â Â Â Â Â 
the probable collateral
implications of the error;

Â 

Â·Â Â Â Â Â Â Â 
the weight a juror would
probably place upon it, giving consideration to whether the record contains
Âoverwhelming evidence supporting the finding;Â and

Â 

Â·Â Â Â Â Â Â Â 
whether declaring the error
harmless would encourage the State to repeat it with impunity.

Â 

Roberson v. State, 100 S.W.3d 36, 41 (Tex. App.ÂWaco 2002, pet.
denied); see also Harris v. State, 790 S.W.2d 568, 587 (Tex. Crim. App.
1989).








The source of this error was the innocent
misconduct of police, and the StateÂs reliance on this unconstitutionally
obtained confession in trial. Â During trial, this confession was repeatedly
referenced, and portions of the recorded statement were played for the jury
numerous times in questioning police and Russell. Â The recording was also used in
the StateÂs closing arguments. Â RussellÂs confession to police contained
numerous fabrications, and the State used those lies to attack his character
for truthfulness and trustworthiness.Â  The implications of the confession were
that Russell was an untrustworthy liar who must be convicted and punished in a
severe manner. Â RussellÂs defense was not that he did not commit the stabbing, but
rather that the stabbing was justified as self-defense and that he lack the requisite
mens rea to be guilty of murder. Â The success of these defenses turned
on the juryÂs determination of RussellÂs credibility, and it was his credibility
which the State used the confession to undermine.Â  Despite the substantial
evidence of guilt, there was little evidence of intent absent RussellÂs confession.Â 
Though the record indicates this confession was not obtained in flagrant
violation of constitutional rights, holding its admission harmless would
encourage police and prosecutors to be less diligent in adhering to the rules
of Miranda.

Â Â Â Â Â Â Â Â Â  While the evidence apart from the
custodial statement is sufficient to support the verdict, we cannot find that
there is no reasonable likelihood that the StateÂs use of RussellÂs statement
did not materially affect the juryÂs deliberation. Â See Wesbrook v. State,
29 S.W.3d 103, 119 (Tex. Crim. App. 2000). Â As the Court of Criminal Appeals
recently stated, it is difficult to know that the thoughts of the jury
regarding a particular piece of evidence, and although suppression of this
evidence might not have altered the juryÂs verdict and assessment of
punishment, we cannot say so beyond a reasonable doubt.Â  Renteria v. State,
No. 74-829, 2006 Tex. Crim. App. LEXIS 1919, at *16-17 (Tex. Crim. App. Oct. 4,
2006).Â  Therefore, we hold that the erroneous admission of RussellÂs confession
cannot be found beyond a reasonable doubt to have not contributed to the juryÂs
verdict of guilty of murder and its assessment of punishment. Â Tex. R. App. P. 44.2(a).

ÂAlthough we are slow to overturn the verdict of
a jury, when fundamental constitutional protections are violated, however
innocently, we must uphold the integrity of that law.ÂÂ  McCarthy, 65
S.W.3d at 56.Â  Accordingly, we reverse the judgment of the trial court and
remand this cause for a new trial consistent with this opinion.

Â 

Â 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Â Â Â Â Â Â Â Â Â  (Chief
Justice Gray dissenting)

Affirmed

Opinion delivered and
filed November 15, 2006

Publish

[CRPM]Â  Â 









[1]
Â Â Â Â Â Â Â Â Â Â Â Â Â  In addition to his Fifth Amendment claim, Russell also contends
that the admission of his statement violated the Sixth Amendment, article I,
section 10 and section 19 of the Texas Constitution, and articles 1.05, 38.03,
38.22 and 38.23 of the Texas Code of Criminal Procedure.Â  However, because
Russell failed to present these contentions to the trial court, he did not
preserve them for appellate review. Â Tex.
R. App. P. 33.1.





[2]
Â Â Â Â Â Â Â Â Â Â Â Â Â  The State argued in at the trial court level that because there
was a lapse of Âmore than a few momentsÂ between the question regarding the
knife and RussellÂs request for his attorney, the interrogation had ended, and
the request was void. Â The State also placed some reliance on the fact that
there is only one question asked. The argument was not raised before this
Court, but it is nonetheless unpersuasive because these facts present a
continuous encounter with police.Â  Clearly, this was still a part of the
custodial interrogation when viewed from the perspective of the suspect.Â  United
States v. Webb, 755 F.2dÂ  382, 388 (5th Cir. 1985); see also Bush v.
State, 697 S.W.2d 397, 403 (Tex. Crim. App. 1985) (incriminating statement
as was the result of custodial interrogation despite more than 15 minutes since
the time of the question and since the suspectÂs last statement).





[3]
Â Â Â Â Â Â Â Â Â Â Â Â Â  By taking the stand to rebut the statement offered against him,
Russell did not waive his right to now claim harm where, in testifying, he
offered testimony to rebut the evidence admitted over his objection. Â See Leday
v. State, 983 S.W.2d 713, 718-19 (Tex. Crim. App. 1998).