TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-05-00769-CV




Mary Ghrist, Appellant


v.


Roy Ghrist, Appellee




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL
DISTRICT

NO. 378,930, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING


 

D I S S E N T I N G O P I N I O N


 I withdraw my dissenting opinion dated May 11, 2007,
and substitute the following.

 Ex parte Burson is indeed a pathmarking precedent on a
state court's authority to enforce a divorce decree by requiring
payment of VA disability benefits. See 615 S.W.2d 192 (Tex.
1981) (orig. proceeding). The majority erroneously concludes
that this case is just like Burson and holds that the result must
be the same. But the majority is mistaken in supposing that
Burson controls the outcome here. In Burson the enforcement
order at issue required the former service member to pay a
portion of his VA disability pay to his former spouse. Such an
order is impermissible under federal law. See 38 U.S.C. §
5301(a) (Supp. III 2003). In this case, we are presented with a
divorce decree that, depending on its interpretation, may or may
not necessitate an impermissible enforcement order. Thus,
disposing of the case 

before ascertaining the appropriate interpretation of the decree
is premature. For this reason, I would reverse the trial court's
order and remand for further proceedings to ascertain the intent
of the parties and to then determine whether the decree is
enforceable. Accordingly, I respectfully dissent.


BACKGROUND

 During the Ghrists' marriage, Roy served 18 years in
the U.S. Air Force, retiring in 1975. Shortly after his
retirement, it was determined that Roy was 40% disabled, making
him eligible to receive disability pay, which is non-taxable. (1) 
In 1976, while still married, Roy waived a portion of his
military retirement pay as required by statute to receive VA
disability pay. See 38 U.S.C. § 5305 (2000). He thereafter
received two checks each month--one from the Air Force for his
retirement pay and one from the VA for his disability pay. At
some point later, but prior to the parties' divorce, Roy
cancelled the waiver of military pay and thereafter received only
one check each month from the Air Force that included both his
military retirement pay and his disability pay.

 When the Ghrists divorced in 1985, they executed an
agreed divorce decree. The divorce became final, and neither
party timely perfected an appeal. The relevant portion of the
decree states that:


The Court finds that Roy A. Ghrist now receives a
monthly retirement benefit of $772.00 gross and $625.00
disposable. The Court further finds that the community
interest in the monthly retirement benefit is fifty
percent (50%). The Court further finds that
Respondent's [Mary] fifty percent (50%) community
interest is now equal to a monthly retirement benefit
of $327.38. The Court further finds that costs-of-living related increases are made to the present
retirement periodically and, in all probability, those
costs-of-living related increases will occur in the
future.


 . . . .


It is ORDERED and DECREED that Mary S. Ghrist shall
have judgment against and recover from Roy A. Ghrist
fifty percent (50%) of the present disposable and
future military retirement received each month by Roy
A. Ghrist computing said amount by deducting from his
"gross", withholding only, to reach his "net". Any
election of benefits by Roy A. Ghrist shall not reduce
the amount or the percentage of the retirement awarded
to Mary S. Ghrist.



(Emphasis in italics added.) The decree also designates Roy as a
constructive trustee for Mary's benefit with respect to the
retirement.

 Shortly after the divorce, Mary began receiving
payments directly from the Air Force of the 50% awarded to her. 
See 10 U.S.C. § 1408(d)(1) (2000) (providing for direct payment). 
Thereafter, Roy again waived a portion of his military retirement
pay to receive VA disability pay. He therefore returned to
receiving his disability pay from the VA and his retirement pay
from the Air Force. The change reduced the amount he received
from the Air Force, in turn reducing the amount that Mary
received each month.

 In 2003, approximately 15 years after Roy's post-divorce waiver of retirement pay, Mary filed a petition for
enforcement of the divorce decree. The trial court denied the
petition and made the following finding of fact:


Applying the formula for division of the military
retirement contained in the Decree signed by this Court
in 1985, it is apparent that Petitioner [Mary] has
lost money and will continue to lose money each month
which she would otherwise receive as her one-half
interest in Respondent's [Roy] military retirement
directly due to his post-divorce receipt of a portion
of this retirement benefits in the form of disability
payments from the Veteran's Administration rather than
continuing to receive all of his retirement monies from
the United States Air Force itself.



Despite finding that Mary's payment was reduced, the court
concluded that enforcement of the decree as it relates to
military disability benefits is barred by federal statute and
federal and state case law. The court further concluded that
Mary could not enforce a claim to recover the amount by which her
payments had been reduced based on military retirement monies
paid to Roy by the VA for his disability.


ANALYSIS

 On appeal, Mary urges that the trial court erred in
determining it could not enforce the agreed divorce decree. 
Relying on federal and state case law holding that federal
statutes preempt state courts from awarding VA disability
benefits, Roy counters that enforcement of the decree
impermissibly penalizes him for electing to receive VA benefits. 
Mary also argues that, even if the decree improperly awarded VA
disability benefits, Roy may not now collaterally attack the
agreement because it has become a final, unappealed judgment.

 The majority concludes that, because the Texas Supreme
Court did not bar the collateral attack in Burson, Roy is not
barred from collaterally attacking the agreed divorce decree in
this case. I disagree, and begin with a discussion of federal
preemption to supply the context for my conclusion.


Federal preemption of VA disability benefits

 Both the United States Supreme Court and the Texas
Supreme Court have held, using different rationales, that federal
preemption of VA disability benefits prevents a trial court from
dividing such benefits upon divorce as community property. See
Mansell v. Mansell, 490 U.S. 581 (1989); Burson, 615 S.W.2d 192;
Ex parte Johnson, 591 S.W.2d 453 (Tex. 1979) (orig. proceeding). 
The trial court concluded--as does the majority--that Mansell and
Burson prohibited enforcement of the Ghrists' divorce decree as a
matter of law.

 In Mansell, the California Court of Appeal had rejected
a retired service member's request to modify a divorce decree
provision that awarded his former wife 50% of his total military
retirement pay, including a portion he had waived to receive VA
disability benefits. 490 U.S. at 586-87. The former service
member argued that the Uniformed Services Former Spouses'
Protection Act (USFSPA) precluded the trial court from treating
his VA disability benefits as community property. Id. at 586. 
Congress enacted the USFSPA in direct response to the Supreme
Court's earlier decision in McCarty v. McCarty, 453 U.S. 210
(1981), which determined that federal law preempted state courts
from considering any military retirement benefits as community
property. Mansell, 490 U.S. at 587-88.

 The USFSPA explicitly permits state courts to treat
"disposable retired pay" as community property. 10 U.S.C. §
1408(c)(1) (2000). "Disposable retired pay" is defined as "the
total monthly retired pay to which a member is entitled" minus
certain deductions, including amounts waived in order to receive
compensation under title 38, which covers veterans' benefits. Id.
§ 1408(a)(4) (2000). The Supreme Court reasoned that, because
pre-existing federal law, as construed in McCarty, had preempted
application of state community property law to military
retirement pay, only an affirmative grant of authority from
Congress could restore the states' authority to treat military
retirement pay as community property. Mansell, 490 U.S. at 588. 
The Court therefore interpreted the USFSPA as abrogating federal
preemption only as to "disposable retired pay." Id. at 589. 
Thus, the USFSPA does not grant state courts the power to award
any of the items deducted from gross retired pay such as VA
disability benefits. See id. at 594-95.

 In Burson, a retired service member, after his divorce,
waived all of his Air Force disability retirement pay in exchange
for VA disability benefits. (2) 615 S.W.2d at 193. When he
subsequently failed to make payments to his former wife, she
commenced contempt proceedings to enforce their divorce decree,
which had ordered him to pay her a portion of his Air Force
disability retirement pay each month. Id. The trial court held
him in contempt and committed him to jail. Id. The supreme
court, in a habeas corpus proceeding, ordered that the service
member be discharged, concluding that federal law preempted state
courts from ordering payment of VA disability benefits. Id. In
reaching this conclusion, the court relied on 38 U.S.C. §
3101(a), which has been redesignated without substantive change
as 38 U.S.C. § 5301(a) and now reads in part:


Nonassignability and exempt status of benefits


Payments of benefits due or to become due under any law
administered by the Secretary [of Veterans Affairs]
shall not be assignable except to the extent
specifically authorized by law, and such payments made
to, or on account of, a beneficiary shall be exempt
from taxation, shall be exempt from the claim of
creditors, and shall not be liable to attachment, levy,
or seizure by or under any legal or equitable process
whatever, either before or after receipt by the
beneficiary.


 

38 U.S.C. § 5301(a). (3) The court held that VA benefits "are not
divisible or assignable. They are not property." Burson, 615
S.W.2d at 194. The court further held that "a divorce decree
cannot prohibit [the service member] from doing that which the
federal law properly gave him the right to do." Id. at 196. In
addition, the court stated that "[f]ederal preemption of veterans
benefits for disability does not leave room for their defeat,
either by implication or indirection." Id. Thus, a Texas court
cannot expressly or impliedly prohibit a retired service member
from unilaterally waiving some or all of his military retirement
pay in exchange for VA disability benefits. Id.; Limbaugh v.
Limbaugh, 71 S.W.3d 1, 17 (Tex. App.--Waco 2002, no pet.).

 In support of Roy's contention that federal law bars
enforcement of the divorce decree, he cites Limbaugh, 71 S.W.3d
at 17, and Freeman v. Freeman, 133 S.W.3d 277, 280 (Tex. App.--San
Antonio 2003, no pet.), both of which held provisions related to
VA disability benefits invalid. In Limbaugh, the Waco court held
that a provision requiring the service member to make up the
difference in payment amount if he elected to receive VA
disability pay was invalid because it prohibited the service
member "from doing that which the federal law properly gave him a
right to do." 71 S.W.3d at 18 (quoting Burson, 615 S.W.2d at
196). In Freeman, the San 

Antonio court held that a provision preventing the service member
from electing to receive VA disability benefits was invalid for
the same reason. 133 S.W.3d at 280 (citing Burson, 615 S.W.2d at
196; Limbaugh, 71 S.W.3d at 17). Both Limbaugh and Freeman,
however, involved direct appeals of divorce decrees, whereas the
case before us involves a collateral attack on a final,
unappealed divorce decree; thus, neither case is controlling
here. (4)


Collateral attack

 As with other final, unappealed judgments which are
regular upon their face, divorce judgments are not vulnerable to
collateral attack. Berry v. Berry, 786 S.W.2d 672, 673 (Tex.
1990). Only a void judgment may be collaterally attacked. 
Browning v. Placke, 698 S.W.2d 362, 363 (Tex. 1985). A judgment
is void only when the court rendering judgment "had no
jurisdiction of the parties, no jurisdiction of the subject
matter, no jurisdiction to enter the judgment, or no capacity to
act as a court." Cook v. Cameron, 733 S.W.2d 137, 140 (Tex.
1987). All errors other than jurisdictional errors render the
judgment merely voidable and must be attacked within prescribed
time limits. Id.

 Because Mansell recognizes preemption of state
community property laws in the area of VA disability benefits
under the USFSPA (10 U.S.C. § 1408) and Burson does so
independently under 38 U.S.C. § 5301(a), the issue of collateral
attack must be examined under both statutes.

 1. The USFSPA

 The field of domestic relations is generally a matter
of state law, and when Congress passes general legislation, it
rarely intends to displace state law in that particular area. 
Mansell, 490 U.S. at 587 (citing Rose v. Rose, 481 U.S. 619, 628
(1987) and Hisquierdo v. Hisquierdo, 439 U.S. 572, 581 (1979)). 
When state family law has come into conflict with a federal
statute, the Supreme Court has limited review under the Supremacy
Clause to a determination of whether Congress has "positively
required by direct enactment" that state law be preempted. 
Hisquierdo, 439 U.S. at 581 (citing Wetmore v. Markoe, 196 U.S.
68, 77 (1904)). Before a state law governing domestic relations
will be overridden, it must do "major damage" to "clear and
substantial" federal interests. Id. (quoting United States v.
Yazell, 382 U.S. 341, 352 (1966)).

 Whether federal law preempts state community property
laws is a different question from whether the USFSPA preempts the
common law doctrine of res judicata. Trahan v. Trahan, 894
S.W.2d 

113, 117 (Tex. App.--Austin 1995, writ denied), cert. denied, 517
U.S. 1155 (1996). In Mansell, the Supreme Court addressed the
issue of federal preemption of state community property laws, but
also observed that it had no jurisdiction to decide whether the
doctrine of res judicata applied because that was a matter of
state law. 490 U.S. at 586 n.5.

 The Texas Supreme Court has rejected collateral attacks
on divorce decrees that violated the USFSPA by awarding more than
"disposable retired pay." See, e.g., Baxter v. Ruddle, 794
S.W.2d 761, 762 (Tex. 1990) (decree awarded portion of gross
military retirement pay); Berry, 786 S.W.2d at 673 (decree
awarded portion of gross military disability retirement pay);
Cook, 733 S.W.2d at 140 (decree awarded portion of gross military
retirement pay). Each case involved a divorce decree that had
become final prior to the USFSPA's 1981 effective date.

 In Berry, the 1980 divorce decree ordered the service
member to pay 25% of his gross military disability retirement pay
to his former wife, which he failed to do. 786 S.W.2d at 673.
Pursuant to an agreed order on contempt and enforcement motions,
the trial court mandated payment; however, the service member
then elected to receive his disability pay from the VA and
reduced his payments to his former wife. Id. The wife filed a
motion to enforce the prior order, but the trial court overruled
the motion, and the court of appeals affirmed. Id. Even though
the Berrys' divorce decree became final before the effective date
of the USFSPA, the appellate court held that the USFSPA prevented
state courts from treating military retirement pay that had been
waived to receive VA disability benefits as property divisible on
divorce. Id. The court reasoned that retroactive application of
the USFSPA was required because Mansell permitted modification of
a property settlement agreement that had become final. Id. The
supreme court reversed and remanded the case to the trial court,
observing that the Mansell decision turned on the California
court's determination that it was appropriate under California
law to reopen the final settlement order, and that Mansell does
not require a similar result under Texas law. Id. at 673 (citing
Mansell, 490 U.S. at 586 n.5). (5)

 The divorce decree in Berry became final before the
USFSPA's 1981 effective date, while the Ghrists' decree became
final in 1985. Roy argues that Berry is distinguishable because
the question the supreme court specifically addressed was whether
the USFSPA applied retroactively to a divorce decree that was
final before the USFSPA's enactment. See id. at 672. The
language in Berry, however, is broader; the court states that
"[b]ecause the final judgment is voidable as opposed to void, the
rule of res judicata would apply." Id. at 673. In a similar
case, the San Antonio court relied on Berry to prevent a
collateral attack on a 1988 divorce decree. Jones v. Jones, 900
S.W.2d 786, 787 (Tex. 

App.--San Antonio 1995, writ denied); see also Baker v. Donovan,
199 S.W.3d 577, 580 (Tex. App.--Houston [1st Dist.] 2006, pet.
denied) (op. on reh'g) (preventing collateral attack on 1987
decree). In Jones, a consent decree provided that the former
wife was entitled to 25% of the "monthly amount that a retired
Major with 20 years service will receive on the date [the service
member] begins to receive his retirement." (Emphasis added.) 
After the divorce, the service member retired, received a 40%
disability rating, and elected to receive disability in lieu of a
portion of his retirement. Id. The trial court entered a
judgment enforcing the decree in favor of the former wife. Id. 
The appellate court affirmed the judgment, holding that the
retired service member could not collaterally attack the final,
unappealed decree. Id. at 788. Based on Berry and Jones, I
conclude that federal preemption under the USFSPA does not
prevent a state court from enforcing a final, unappealed divorce
decree awarding military retirement pay, even when there has been
a post-divorce waiver of retirement pay in exchange for VA
disability benefits.


2. Section 5301(a)

 The Texas Supreme Court has also considered the issue
of collateral attack in the context of 38 U.S.C. § 5301(a). In
Burson, the supreme court allowed a collateral attack, but did
not explicitly state that the judgment was void. 615 S.W.2d at
194. The court specifically addressed collateral attack,
observing that 

an award of retirement pay cannot be collaterally attacked, but
distinguishing VA benefits because federal preemption exists:

A district court, under our decisions, has the power to
enforce a decree ordering a spouse to make payments out
of the Air Force disability retirement pay. If there
is no appeal from the divorce court's division of
property, that decree may not be collaterally attacked.



The important fact which distinguishes this case from
those cited above is that Burson, after the divorce
decree, made an election to forego his Air Force
disability benefits and to receive instead the
disability benefits from the Veterans Administration. 
Veterans Administration benefits, unlike Air Force
disability benefits, are not divisible or assignable. 
They are not property.


Military disability retirement pay and Veterans
Administration benefits are established by different
statutory schemes. The statutes control the property
characterization of each and the fact of, or lack of,
federal preemption of each.



Id. at 194-95 (citations and footnotes omitted).

 The Burson case actually involved two judgments--the
original divorce decree and the trial court's order enforcing the
divorce decree. Id. at 193. The divorce decree awarded only a
set amount from the service member's "Air Force disability
check." Id. In the language quoted above, the court recognized
that a district court could enforce a decree ordering payments
out of Air Force disability retirement pay and that the decree
would not be subject to collateral attack. Id. at 194. Because
the Burson decree awarded only Air Force disability, it is clear
that the judgment at issue was the trial court's order of
enforcement. The supreme court stated that:


Burson argues that the district court cannot order him
to pay over to [his former wife] any portion of the
Veterans Administration disability benefits because the
supremacy clause of the United States Constitution
preempts this area from the purview of state courts. 
We agree. We, therefore, grant the writ of habeas
corpus and order Burson discharged.



Id. at 193. An enforcement order that expressly requires payment
of VA disability benefits, or that impliedly requires payment of
such benefits because they are the only income or asset available
to satisfy the order, would violate section 5301(a), which states
that VA disability benefits "shall not be liable to attachment,
levy, or seizure by or under any legal or equitable process
whatever, either before or after receipt by the beneficiary." 38
U.S.C. § 5301(a). (6) Such an order would be void because the
court had no jurisdiction to enter the judgment, and therefore
would be subject to collateral attack. See Cook, 733 S.W.2d at
140. This explains why the Burson court permitted the collateral
attack.

 Cases where collateral attacks have been sustained on
the theory that the judgment is void because the court lacked
jurisdiction to enter the particular judgment involve error that
"is quite serious and strikes at the very power of the court to
render the judgment." Austin Indep. Sch. Dist. v. Sierra Club,
495 S.W.2d 878, 882 (Tex. 1973). The mere fact that an action by
a court is contrary to a statute, constitutional provision, or
rule of civil or appellate procedure makes the judgment only
voidable or erroneous, absent one of the "rare circumstances"
that makes a judgment void. Mapco, Inc. v. Forrest, 795 S.W.2d
700, 703 (Tex. 1990). Section 5301(a), however, clearly
evidences Congress's intent to strike at the very power of a
court to render judgment, and therefore an order of enforcement
awarding VA disability benefits is one of the rare circumstances
where a particular judgment is void. Thus, as the supreme court
in Burson recognized, section 5301(a) acts as a limit on a
court's power to enforce even a final, unappealed divorce decree.


 The Ghrists' situation is similar to that in Burson. 
As in Burson, the parties' divorce decree was enforceable when
entered into, became final, and was not appealed. Also, as in
Burson, there was a post-divorce waiver of military retirement
pay in exchange for VA disability pay and an attempt to enforce
the original decree. At this point, however, the two cases take
divergent paths. In Burson, the trial court attempted to enforce
the original decree by requiring the former service member to
make payments from his VA disability pay. It was this method of
enforcement that the supreme court held invalid. In this case,
however, the trial court has not attempted to enforce the decree. 
As discussed below, the Ghrists' divorce decree, depending on its
interpretation, may or may not necessitate an impermissible
enforcement order. Without additional proceedings in the trial
court, it is premature to conclude the Ghrists' decree is
unenforceable.

 In summary, under both the USFSPA and 38 U.S.C. §
5301(a), a court may enforce a final, unappealed divorce decree
awarding military retirement pay even though there has been a
waiver of retirement pay to receive VA disability benefits. 
However, the court's power to enforce the decree is limited by
section 5301(a), and the court therefore may not expressly or
impliedly require the payment of VA disability benefits. (7) Having made this determination, the next step is to consider
whether the Ghrists' divorce decree is capable of enforcement as
written.


Interpretation and enforcement of the divorce decree

 The Ghrists dispute the proper interpretation of their
divorce decree. A marital property settlement agreement that is
incorporated into a final divorce decree is treated as a
contract, and its legal force and meaning are governed by the law
of contracts. McGoodwin v. McGoodwin, 671 S.W.2d 880, 882 (Tex.
1984). In construing a contract, the primary concern of the
court is to 

ascertain and give effect to the true intention of the parties as
they expressed that intent in the instrument. Gulf Ins. Co. v.
Burns Motors, Inc., 22 S.W.3d 417, 423 (Tex. 2000); Coker v.
Coker, 650 S.W.2d 391, 393 (Tex. 1983). Whether a contract is
ambiguous is a question of law for the court to decide by looking
at the contract as a whole in light of the circumstances present
when the parties entered the contract. Coker, 650 S.W.2d at 394. 
Contract language is accorded its plain, grammatical meaning
unless it definitely appears that the intention of the parties
would thereby be defeated. Lyons v. Montgomery, 701 S.W.2d 641,
643 (Tex. 1985). If the written instrument's language can be
given a certain or definite legal meaning or interpretation, then
it is not ambiguous. Buys v. Buys, 924 S.W.2d 369, 372 (Tex.
1996) (citing Coker, 650 S.W.2d at 393). A contract is ambiguous
when its meaning is uncertain and doubtful or it is reasonably
susceptible to more than one meaning. Coker, 650 S.W.2d at 393.

 The plain language of the Ghrists' agreed divorce
decree does not explicitly award a portion of VA disability
benefits. Instead, the agreement addresses the division of Roy's
"retirement benefit." (8) It awards Mary 50% of the retirement
benefit and further provides that "[a]ny election of benefits" by
Roy "shall not reduce the amount or percentage of the retirement
awarded" to Mary. (Emphasis added.)

 The first inquiry is whether the phrase "election of
benefits" has a plain, grammatical meaning that is unambiguous
and, if so, whether that meaning encompasses Roy's waiver of part
of his military retirement pay. VA disability payments are
commonly referred to as benefits. See, e.g., 38 U.S.C. § 5301;
Mansell, 490 U.S. at 583. Title 38 of the U.S. Code, which
addresses such payments, is titled "Veterans' Benefits." An
"election" is defined as "[t]he exercise of choice; esp., the act
of choosing from several possible rights or remedies in a way
that precludes the use of other rights or remedies." Black's Law
Dictionary 536 (7th ed. 1999). Because it was determined that
Roy was disabled, he had the option of waiving retirement pay to
receive VA disability pay, and he chose to exercise that option. 
Burson also characterizes this choice as an election. 615 S.W.2d
at 196 ("[F]ederal law empowered Burson to make an election."). 
Thus, the phrase "election of benefits" has a plain, grammatical
meaning and includes Roy's waiver of retirement pay to receive VA
disability benefits. This interpretation is reinforced by
looking at the circumstances present when the parties entered the
contract, see Coker, 650 S.W.2d at 394, namely that during the
marriage Roy had initially waived retirement pay to receive VA
disability benefits, making it likely that both parties were
aware of the possibility and effect of such an option. It is
clear therefore that the plain language of the decree encompassed
a potential future waiver of VA benefits by Roy.

 What is unclear, however, is what the parties
contemplated would be the effect of a waiver of retirement pay. 
The decree states that any election of benefits "shall not reduce
the amount or percentage of the retirement awarded." At the
hearing on the motion to enter and the motion to reconsider,
there was no testimony addressing the parties' intent as to that
provision. The language can be interpreted as allowing Roy to
make certain elections of benefits, but not any election that
would reduce the amount of retirement. If interpreted in this
way, even though included in a final, unappealed judgment, such a
provision could not be enforced because it requires a court to
prevent Roy from "doing that which the federal law properly gave
him a right to do." See Burson, 615 S.W.2d at 196. However, the
language also can be interpreted as a voluntary commitment by Roy
to provide a continuous stream of income to Mary by allowing for
alternative payments if his retirement benefits are reduced by
his election. If this is what the parties intended, then a court
could enforce their agreement to the extent income or assets
exist apart from VA disability benefits to satisfy the judgment. 
Without testimony regarding the parties' intent, the decree could
be subject to either of these interpretations and perhaps others. 
Because the decree is reasonably susceptible to more than one
meaning, it is ambiguous. See Coker, 650 S.W.2d at 393.

 A court may render further orders to enforce the
division of property made in a divorce decree to assist in the
implementation of or to clarify the prior order; however, the
court may not amend, modify, alter or change the division of
property made in the divorce decree. Tex. Fam. Code Ann. §§
9.006(a), .007(a) (West 2006). In Mary's petition for
enforcement, she requested that, "if the Court finds that any
part of the order sought to be enforced is not specific enough to
be enforced by contempt, the Court enter a clarifying order
restating the terms of the order, decree, or judgment in a manner
specific enough to allow enforcement by contempt." Because the
Ghrists' agreed divorce decree is ambiguous, the trial court must
ascertain the parties' intent before it may determine the extent
to which the award of retirement benefits is enforceable. (9)


CONCLUSION

 The parties' divorce decree is ambiguous and subject to
both enforceable and unenforceable interpretations. As such, it
is premature to conclude that enforcement of the decree would
require an impermissible order. Because the trial court
determined that as a matter of law it could not enforce the
Ghrists' divorce decree, the court did not ascertain the parties'
intent regarding the effect of the "election of benefits"
provision in the decree. I would therefore reverse the trial
court's order and remand this case to the trial court to make
such a finding. I respectfully dissent.



 
 

 Jan P. Patterson, Justice

Before Justices Patterson, Pemberton and Waldrop

Filed: July 12, 2007
1. There was a reference at the hearing on the petition for
enforcement that Roy's disability rating had increased to 60%. The
record does not, however, disclose the nature of Roy's disability. 
2. Burson was 100% disabled, receiving only disability pay
from the Air Force and, after the divorce, he made an election to
receive his total disability benefits from the VA. At the time of
the contempt hearing, Burson was not receiving any Air Force
disability or retired pay. His only source of income was his VA
disability pay. Roy Ghrist was 40% disabled and continues to
receive Air Force retired pay in an amount that is in excess of
fifty percent of his combined retirement and disability pay.
3. The Supreme Court observed in Mansell that, because it
decided the USFSPA precluded treating VA disability benefits as
community property, it need not address whether this
nonassignability provision independently protects such pay. See
Mansell v. Mansell, 490 U.S. 581, 587 n.6 (1989).
4. Limbaugh and Freeman are further distinguishable because
they involved language included in the divorce decree by the court
and not by agreement of the parties. Ordinarily, parties may place
in an agreed divorce decree provisions that could not have been
ordered by the trial court if it had divided the property, and the
judgment agreed to by the parties is binding on them. Baxter v.
Ruddle, 794 S.W.2d 761, 763 (Tex. 1990) (agreement awarded portion
of gross military retirement pay including post-divorce increases);
Boyett v. Boyett, 799 S.W.2d 360, 363 (Tex. App.--Houston [14th
Dist.] 1990, no writ) (agreement awarded portion of husband's
separate property to wife); Traylor v. Traylor, 789 S.W.2d 701,
702-03 (Tex. App.--Texarkana 1990, no pet.) (agreement required
husband to maintain medical insurance on wife); see also Francis v.
Francis, 412 S.W.2d 29, 33 (Tex. 1967) (even before family code
provided for limited awards of spousal maintenance, parties'
contract for spousal support payments did not violate public policy
against court-ordered alimony).
5. Because of Berry's procedural posture, the court addressed
only the application of res judicata in the context of the USFSPA;
it did not address enforcement, section 5301 of Title 38 of the
U.S. Code, or Burson. See Berry v. Berry, 786 S.W.2d 672, 673
(Tex. 1990).
6. The legislative history of this provision "recognizes two
purposes: to 'avoid the possibility of the Veterans'
Administration . . . being placed in the position of a collection
agency' and to 'prevent the deprivation and depletion of the means
of subsistence of veterans dependent upon these benefits as the
main source of their income.'" Rose v. Rose, 481 U.S. 619, 630
(1987) (citing S. Rep. No. 94-1243, pp. 147-148 (1976)).


 The Supreme Court has held that this statute does not
prevent a court from using VA disability benefits to enforce a
child support order because the statute's legislative history
showed that the benefits "compensate for impaired earning capacity
and are intended to 'provide reasonable and adequate compensation
for veterans and their families.'" Id. In Rose, however, the
court distinguished support obligations such as child support and
alimony from divisions of property. Id. at 631-32 ("[I]n reaching
what was clearly an alternative holding in Wissner [v. Wissner, 338
U.S. 655 (1950)] that community property division of insurance
proceeds would constitute a 'seizure' in violation of a provision
against 'attachment, levy, or seizure,' the Court was careful to
identify a possible exception for alimony and child support cases. 
The suggested basis for this exception was that family support
obligations are deeply rooted moral responsibilities, while the
community property concept is more akin to an amoral business
relationship."); id. at 632 n.6 ("We construed these amendments to
'expressly override' the anti-attachment provision for support
claims, finding it 'logical to conclude that Congress . . . thought
that a family's need for support could justify garnishment, even
though it deflected other federal benefit programs from their
intended goals, but that community property claims, which are not
based on need, could not do so.'" (quoting Hisquierdo v.
Hisquierdo, 439 U.S. 572, 587 (1979))).
7. In Baker v. Donovan, the Houston court of appeals did not
discuss section 5301; however, the enforcement order it upheld did
not require the service member to pay any portion of his VA
disability benefits. 199 S.W.3d 577 (Tex. App.--Houston [1st Dist.]
2006, pet. denied) (op. on reh'g). After the parties' divorce, the
service member retired and began receiving $5000 per month, which
included $1069 designated as VA disability pay. Id. at 578. On
the former spouse's petition for enforcement and clarification of
the parties' agreed divorce decree, the trial court ordered that
the service member pay his former spouse $387.87 each month from
his disposable military retirement pay. Id. at 578-79. On appeal,
the service member argued that the trial court erred because it
failed to take into account his VA disability pay and, thus, failed
to reduce the retirement pay by the amount of disability. Id. at
579. The court disagreed, holding that the decree could not be
collaterally attacked and that any modification of the decree could
only be considered upon the timely filing of a motion to modify. 
Id. at 580.


 Similarly, courts from other states have upheld final,
unappealed divorce decrees agreed to by the parties where the
agreements could be enforced without reference to VA disability
benefits. See, e.g., Danielson v. Evans, 36 P.3d 749, 760-61
(Ariz. Ct. App. 2006) (contempt order enforcing agreed divorce
decree did not violate federal law where court order did not
require payment from VA disability pay and former service member
failed to show that VA pay was his only source for making such
payment); Abernethy v. Fishkin, 699 So. 2d 235, 240 (Fla. 1997)
("[W]hile federal law prohibits the division of disability
benefits, it does not prohibit spouses from entering into a
property settlement agreement that awards the non-military spouse
a set portion of the military spouse's retirement pay. Nor does it
preclude indemnification provisions ensuring such payments, so long
as veterans' disability benefits are not the source of such
payments."); In re Marriage of Nielsen, 792 N.E.2d 844, 849 (Ill.
App. Ct. 2003) (trial court impermissibly enforced divorce decree
by requiring payment from disability benefits; cause was remanded
to determine if former service member was free to satisfy his
obligation with assets other than his disability benefits);
Scheidel v. Scheidel, 4 P.3d 670, 674 (N.M. Ct. App. 2000)
("[F]ederal law does not prohibit state courts from enforcing
indemnity provisions which ensure the payment of a minimum sum to
a non-military spouse as his or her share of a community pension,
provided that veterans' disability benefits are not specified as
the source of such payments.").
8. Roy argues that the agreement's use of the term
"disposable" twice in discussing retirement indicates that Mary's
award was limited to "disposable retired pay" as defined in the
USFSPA, which omits amounts waived in order to receive VA
disability benefits. See 10 U.S.C. § 1408(a)(4). The agreement,
however, does not explicitly adopt the statutory definition. 
Furthermore, in awarding Mary 50% of the "present disposable and
future military retirement," the agreement states that "said
amount" is computed by "deducting from [Roy's] 'gross', withholding
only, to reach his 'net'." The inclusion of this provision is
inconsistent with an intent to adopt the statutory definition.
9. A Houston court of appeals has held that, when the parties
did not address VA disability benefits in the decree, it would be
an impermissible modification of the original decree for the court
to take the benefits into account during a clarification. Baker v.
Donovan, 199 S.W.3d 577, 580 (Tex. App.--Houston [1st Dist.] 2006,
pet. denied) (op. on reh'g).